UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVIE J. STEVENSON, CDCR #K-16324,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFREY BEARD, et al.,<br><br>Defendants. | Case No.: 3:16-cv-03079-JLS-PCL<br><br>**ORDER:**<br><br>**(1) GRANTING MOTIONS TO PROCEED *IN FORMA PAUPERIS* AND TO FILE EXCESS PAGES (ECF Nos. 2, 3);**<br><br>**(2) DISMISSING COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b);**<br><br>**AND**<br><br>**(3) DENYING MOTION FOR PRELIMINARY INJUNCTION AND/OR PROTECTIVE ORDER (ECF No. 5)** |

STEVIE J. STEVENSON ("Plaintiff"), currently incarcerated at Centinela State Prison ("CEN") in Imperial, California, and proceeding pro se, has filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1), together with a Motion for Leave

to File Excess Pages (ECF No. 3), and followed by a Motion for a Preliminary Injunction (ECF No. 5).

Plaintiff has not paid the civil filing fee required by 28 U.S.C. § 1914(a); instead he seeks leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

**I.    Motion to Proceed *In Forma Pauperis***

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016)). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a copy of his CDCR Inmate Statement Report as well as a prison certificate certified by a trust account official at CEN. *See* ECF No. 2 at 4–8; 28 U.S.C. § 1915(a)(2); S.D. Cal. Civ. L.R. 3.2; *Andrews*, 398 F.3d at 1119. These statements show that while Plaintiff carried an average monthly balance and had average monthly deposits of $20.09 in his account over the 6-month period immediately preceding the filing of his Complaint, he had an available balance of zero at the time of filing. *See* ECF No. 2 at 4, 7. Thus, the Court assesses Plaintiff's initial partial filing fee to be $4.01 pursuant to 28 U.S.C. § 1915(b)(1), but acknowledges he may be unable to pay even that minimal initial fee at this time. *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2), declines to exact any initial filing fee because his prison certificate indicates he may have "no means to pay it," *Bruce*, 136 S. Ct. at 629, and directs the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

///

## II. Motion for Leave to File Excess Pages

Civil Local Rule 8.2a provides that complaints filed by prisoners pursuant to 42 U.S.C. § 1983 must be "legibly written or typewritten on forms supplied by the court," and any additional pages not exceed a total of fifteen. *See* S.D. Cal. Civ. L.R. 8.2.a. Plaintiff used the Court's form Complaint, but he interspersed additional pages and attached more—therefore, his pleading comprises thirty-six pages (ECF No. 1). Plaintiff requests leave to file these excess pages in an effort to "ensure that all claims were presented correctly," and to provide an "explanation about the exhaustion of [his] administrative remedies." (ECF No. 3 at 1.)

A court may *sua sponte* strike a document filed in violation of the Court's local procedural rules. *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (noting district court's "power to strike items from the docket as a sanction for litigation conduct"); *Smith v. Frank*, 923 F.3d 139, 142 (9th Cir. 1991) ("For violations of the local rules, sanctions may be imposed including, in appropriate cases, striking the offending pleading."). However, "district courts have broad discretion in interpreting and applying their local rules," *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (internal quotation and citation omitted), and the Court construes the pleadings of pro se litigants in civil rights cases liberally, affording them the benefit of doubt. *See Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *Bretz v. Kelman*, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985) (en banc).

Here, while Plaintiff's Complaint exceeds the page limitations set by Local Rule 8.2.a, it is not so verbose, "replete with redundancy [or] largely irrelevant" that it violates FED. R. CIV. P. 8(a). *See Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1132 (9th Cir. 2008) (citation omitted); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1059 (9th Cir. 2011) (noting that while "the proper length and level of clarity for a pleading cannot be defined with any great precision," Rule 8(a) has "been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious,

///

or confused, or consisted of incomprehensible rambling" (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1217 (3d ed. 2010))).

Accordingly, the Court **GRANTS** Plaintiff's Motion for Leave to File Excess Pages (ECF No. 3).

### III.  *Sua Sponte* Screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A

#### A.  *Standard of Review*

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. *Plaintiff's Allegations*

Plaintiff divides his Complaint into eight separate causes of action or "Counts," but Counts 1-4 and 8 significantly overlap. Specifically, in Counts 1-4, Plaintiff claims that on January 1, 2014, the former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), Jeffrey Beard, "in concert with" Scott Kernan, CDCR's current Secretary, and Shannon Swain, CDCR's Acting Superintendent of Education, violated his First and Fourteenth Amendment rights by "arbitrarily" amending certain sections of Title 15 of the California Code of Regulations governing inmate law libraries, access to those libraries, and their contents, *see* ECF No. 1 at 5–6 ("Count 1"); replacing Witkin & Epstein treatises and *California Jurisprudence* with a "paging system," and depriving inmates of the "*Gilmore* collection" published by West, *id.* at 7–8 ("Count 2"); failing to update the "only three" library computers available to him to "conduct legal research," and limiting his use of those computers to thirty-minute increments, *id.* at 9–10 ("Count 3"), and "changing the LLEDS [Law Library Electronic Delivery System] from Westlaw to Lexis." *Id.* at 11–13 ("Count 4"). In Count 8, Plaintiff alleges CEN Senior Librarian J. Rohrer refused to provide him with copies of three cases "out of the California Reporter 2d and 3rd series" in November and December 2016. *Id.* at 20 ("Count 8"). Plaintiff claims this denied him the opportunity to "learn about a specific topic of the law as afforded by Westlaw." *Id.*

Plaintiff further claims that in August 2016, Secretary Kernan, CEN's Warden R. Madden, and Litigation Coordinator N. Telles denied him permission to possess "three legal confidential audio CDs," which he claims "dealt with his criminal case," and which were related to a "Penal Code section 1054.9 motion for post-conviction discovery," which had been filed by "his appointed attorney James Bisnow" on August 9, 2012. *Id.* at 16–17 ("Count 6").

In addition, Plaintiff contends two pieces of legal confidential mail—one on or about May 27, 2016, and addressed from the California Innocence Project, and another on or about June 27, 2016, addressed to a Los Angeles County District Attorney—were delivered and/or returned to him opened and were read outside his presence. *Id.* at 14–15 ("Count 5").

Finally, in Count 7, Plaintiff claims a CEN mailroom staff member "with the initials "PC" or "C," together with mailroom supervisor C. Bell, mail staff member C. Walker, Warden Madden, and CEN's Associate Warden of Business Services, D. Brown, denied his "First Amendment right to correspond with attorneys" and denied him the "right to mail his appeal to the CDCR administrative court" in October and November 2016, by refusing to acknowledge his "indigence," denying him "the right to sign a CDCR 193 form," and requiring that he "provide postage for mailing under CCR Title 15 section 3138(g) (h)." *Id.* at 18–19.

Plaintiff alleges on the face of his pleading that "Counts 1-4 and 6" have been exhausted, but he concedes Counts 5 and 7 "are currently pending." *Id.* at 21. Plaintiff makes no reference to Count 8 with regard to exhaustion. *Id.* at 21, 31–32. He seeks declaratory judgment, injunctive relief, compensatory and punitive damages, on behalf of himself, a "class" of "twenty other prisoners," and "the entire prison population within the CDCR." *Id.* at 15, 33–36.

### C. Class Action

As an initial matter, the Court *sua sponte* dismisses all claims purported to be raised by Plaintiff on behalf of any inmate other than himself. (ECF No. 1 at 25.) Class action Plaintiffs must be represented by counsel "best able to represents the interests of the class." *See* FED. R. CIV. P. 23(g). "A litigant appearing in propria persona has no authority to represent anyone other than himself." *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962); *see also McShane v. United States*, 366 F.2d 286 (9th Cir. 1966) (privilege to appear without counsel is personal to the litigant). "It is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."

*Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). This action, therefore, cannot be construed as a class action and may proceed only as an individual civil suit brought by Plaintiff and based on alleged violations of only <u>his</u> constitutional rights pursuant to 42 U.S.C. § 1983. *See Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *3 (E.D. Cal. Mar. 6, 2017) (dismissing pro se prisoner's attempt to bring class action challenging content of CDCR's law library).

### D. Individual Liability & the Gilmore Collection

Next, the Court turns to Counts 1–4. In these Counts Plaintiff seeks to sue the former Secretary of the CDCR, Jeffrey Beard, for "arbitrarily" promulgating and enforcing an early-2014 amendment to Title 15 of the California Code of Regulations—which governs inmate access to law libraries and the contents of those libraries—in ways different that those previously "afforded by the *Gilmore* collection . . . ." (*See* ECF No. at 5-13.) In these same Counts, Plaintiff also seeks to sue Defendants Swain and Madden, who are alleged to have worked "in concert" with Beard. However, in all of these Counts Plaintiff fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2), § 1915A(b)(1).

Under section 1983, Plaintiff must allege facts sufficient to show that each named Defendant individually participated in causing a constitutional violation. *Iqbal*, 556 U.S. at 676–77; *Simmons*, 609 F.3d at 1020–21. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, *Iqbal*, 556 U.S. at 676-77; *Simmons*, 609 F.3d at 1020-21; and as CDCR and CEN administrators, Defendants Beard, Swain, and Madden may only be held liable if they personally "participated in or directed the violations, or knew of the violations and failed to act to prevent them," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–08 (9th Cir. 2011). Some culpable action or inaction must be attributable to the Defendants individually, and while the creation or enforcement of, or acquiescence in, an unconstitutional policy may support a claim, Plaintiff must further allege that the policy was the moving force behind the violation. *Starr*, 652 F.3d at 1205; *Jeffers v. Gomez*, 267 F.3d 895, 914–15 (9th Cir. 2001).

In his Complaint, Plaintiff alleges only that former Secretary Beard's 2014 actions, taken "in concert" with Defendants Swain and Madden, "deprived [him] of the basis [sic] core legal resource material afforded by the *Gilmore* collection." (ECF No. 1 at 7, 5, 9–11). This is insufficient to state a plausible claim of personal liability. *See, e.g.*, *Morales v. Cribbs*, No. 1:13-CV-00591 DLB PC, 2014 WL 2174624, at *5–6 (E.D. Cal. May 23, 2014), aff'd, 633 F. App'x 434 (9th Cir. 2016).

Fifty years ago, in *Gilmore v. Lynch*, Civil Case No. 3:66-cv-45878-SI, the United States District Court for the Northern District of California consolidated numerous suits of inmates and issued an injunction requiring California to maintain a specified list of legal literature in all its prisons to help inmates gain access to the courts, as part of a consent decree. *See Corral v. Yates*, No. 1:10-CV-01341-SKO-HC, 2011 WL 3925131, at *4 (E.D. Cal. Sept. 7, 2011). In 1972, the court approved regulations proposed by CDC offering a more comprehensive list of materials and ordered their adoption. *See Gilmore v. People*, 220 F.3d 987, 994 (9th Cir. 2000). In 1997, after the passage of the Prison Litigation Reform Act, CDC officials sought to terminate the 1972 order. *Id.* at 994–95; *see also Morales*, No. 1:13-CV-00591 DLB PC, 2014 WL 2174624, at *6 (discussing history of *Gilmore* litigation). Ultimately, the Court that issued the *Gilmore* injunction "granted the defendants' motion to terminate the injunction and the court's jurisdiction on April 20, 2010. . . . Thus, the *Gilmore* case is no longer pending." *Corral*, 2011 WL 3925131, at *4.

Moreover, even if Plaintiff had alleged facts sufficient to show personal liability on behalf of Defendants Beard, Swain, and Madden, he still fails to allege facts sufficient to show that their alleged failure to comply with *Gilmore's* remedial order, by itself, violates the Constitution. "[R]emedial orders . . . do not create 'rights, privileges or immunities secured by the Constitution and the laws' of the United States." *Hart v. Cambra*, 1997 WL 564059, *5 (N.D. Cal. 1997) (quoting *Green v. McKaskle*, 788 F.2d 1116, 1123–24 (5th Cir. 1986); *Morales*, No. 1:13-CV-00591 DLB PC, 2014 WL 2174624, at *6).

///

### E. Access to Courts

Further, and with respect to Counts 1-4, 6, and 8, Plaintiff fails to allege facts sufficient to state a plausible access to courts claim. *See* 28 U.S.C. § 1915(e)(2), § 1915A(b)(1). This is in large part because, since *Gilmore*, the law governing prison law libraries has changed dramatically. Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354. Because states must ensure indigent prisoners meaningful access to the courts, *Bounds* held that prison officials were required to provide either: (1) adequate law libraries, or (2) adequate assistance from persons trained in the law. *Bounds*, 430 U.S. at 828. *Bounds* was interpreted to establish "core requirements," and a prisoner alleging deprivation of those core requirements was <u>not</u> required to also allege actual injury in order to a state constitutional claim. *See, e.g.*, *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir. 1989).

However, in 1996 *Lewis* abolished that approach; and now, in order to state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation and internal quotation marks omitted). The right of access does <u>not</u> require the State to "enable the prisoner to discover grievances," or even to "litigate effectively once in court." *Id.* at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewi*s limits the right of access to the courts, as follows:

> [T]he injury requirement is not satisfied by just any type of frustrated legal claim . . . . *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are

> those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 346; *see also Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *2–3 (E.D. Cal. Mar. 6, 2017). Indeed, the failure to allege an actual injury is "fatal." *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal." (quoting *Lewis*, 518 U.S. at 353 & n.4)).

Moreover, and in addition to alleging an "actual injury," Plaintiff must also allege facts sufficient to describe the "non-frivolous" or "arguable" nature of the underlying claim he contends was lost as result of Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417.

As currently pleaded, Plaintiff's claims in Counts 1-4, *i.e.*, that CEN's library facilities fail to meet the *Gilmore* collection's standards, rely on Lexis versus Westlaw, employ a "paging system," and limit the amount of time each inmate may spend on the computer, fail to state an access to courts claim under *Lewis*—"an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. "[P]rison law libraries and legal assistance programs are not ends in themselves," and *Lewis* makes clear that courts must "leave it to prison officials to determine how best to ensure that inmates . . . have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356. "[I]t is that capability, rather than the capability of turning pages in a law library that is the touchstone." *Id.* at 357.

As to Counts 6 and 8, Plaintiff is a bit more specific. For example, in Count 6, Plaintiff claims that some time in August 2016, Defendants Kernan, Madden, and Telles' "collective actions and inactions" denied him access to "three legal audio CDs" sent to him by an attorney appointed to represent him in state habeas proceedings—which were filed

11

four years earlier in August 2012, pursuant to California Penal Code section 1054.9—and that this deprivation denied him access to the court.[2] (ECF No. 1 at 16-17). However, Plaintiff fails to allege any "actual injury" suffered as a result. He admits the Penal Code section 1054.9 motion for post-conviction discovery was filed "on or about August 9, 2012," he was represented by counsel at the time, and he does not further allege any facts to plausibly show he suffered any "actual prejudice with respect to [his] existing litigation, such as the inability to meet a filing deadline or to present a claim," as a result of Defendant Kernan, Madden or Telles's actions, which occurred four years later. *Lewis*, 518 U.S. at 348.

Plaintiff's access to courts claims against Defendant Rohrer in Count 8 fare no better; for while Plaintiff contends Rohrer refused to "provide a copy" of "three cases" so that he could "conduct legal research" in November and/or December 2016, (ECF No. 1 at 20), he does not further allege how or whether this denial resulted in any "actual injury" with respect to a "non-frivolous" criminal appeal, habeas action, or conditions of confinement claim. *Id.*; *see also Alvarez*, 518 F.3d at 1155 n.1.

Thus, for these reasons, the Court finds Counts 1-4, 6, and 8 fail to state an access to courts claim upon which § 1983 relief can be granted, and therefore are dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### D. *Legal Mail (Counts 5 and 7)*

In Count 5, Plaintiff claims two pieces of "clearly marked" confidential legal mail were opened and read outside his presence by "unknown mailroom and/or correctional staff," on or about May 27, 2016, and again on or about June 27, 2016. (ECF No. 1 at 14–

---

[2] California Penal Code section 1054.9 "creates a mechanism by which, . . . a capital or LWOP prisoner prosecuting a habeas corpus petition [in state court] can seek discovery of 'materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at [the] time of trial.'" CAL. PENAL CODE § 1054.9(b); *People v. Superior Court*, 2 Cal. 5th 523, 528 (2017), *reh'g denied* (Apr. 19, 2017).

12

15.) In Count 7, Plaintiff contends a CEN mail staff member with the initials "C" or "PC," mail room supervisor C. Bell, and mail staff member C. Walker, with the "knowledge and approval" of Warden Madden and Associate Warden D. Brown, several times violated his "right to send legal confidential mail" to the CDCR Chief of Inmate Appeals, and three California State Bar and California Appellate Project attorneys. (ECF No. 1 at 18–19.) These alleged violations occurred on October and November 2016, when these individuals required Plaintiff to "provide postage for mailing" pursuant to Title 15, sections 3138(g) and (h)[3] of the California Code of Regulations, and refused him the "right to sign a CDCR 193 Form" authorizing the withdrawal of those costs from his inmate trust account. (*Id.*)

The Court finds that, as currently plead, Counts 5 and 7 allege facts sufficient to state plausible First Amendment claims. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995); *Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1211–12 (9th Cir. 2017) (finding prisoner who alleged to have had his "properly marked legal mail" "arbitrarily and capriciously opened outside his presence on two separate occasions" stated a plausible First Amendment claim); *cf. Mangiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017) ("[P]risoners have a Sixth Amendment right to be present when legal mail related to a criminal matter is inspected."); *see also Silva v. Di Vittorio*, 658 F.3d 1090, 1102–03 (9th Cir. 2011) (discussing requirements for an access-to-court claim premised on prison officials' alleged interference, as opposed to failure to affirmatively assist, with any
///

---

[3] Title 15 of the California Code of Regulations, section 3138(a) requires prison officials "upon an indigent inmate's request," to provide "writing paper, envelopes, a writing implement, and the postage required for five 1-ounce First Class letters per week." Subsection (g) provides that "[i]ndigent inmates desiring to correspond with their attorney or any other confidential correspondent shall be required to utilize their weekly allotment of indigent supplies to send such correspondence," *id.* § 3138(g), and subsection (h) provides indigent inmates "free and unlimited mail to any court or the Attorney General's Office." *Id.* § 3138(h). Section 3084.2(d) requires prisoner's filing a third level administrative appeal to "mail the appeal and supporting documents to the third level Appeals Chief via the United States mail service utilizing his or her own funds, unless the appellant is indigent, in which case the mailing of appeals to the third level of review shall be processed in accordance with indigent mail provisions pursuant to section 3138." CAL. CODE REGS., tit. 15 § 3084.2(d).

prisoner lawsuit), *overruled on other grounds as stated by Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).

However, the Court further finds that because Plaintiff plainly concedes, on the face of his Complaint, that the administrative exhaustion of both Claims 5 and 7 was "currently pending" at the time of filing (ECF No. 1 at 21, 31–32), they too must be dismissed. *See Albino v. Baca,* 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) (noting that where "a prisoner's failure to exhaust is clear from the face of the complaint," his complaint is subject to dismissal for failure to state a claim), *cert. denied sub nom.*, *Scott v. Albino*, 135 S. Ct. 403 (2014); *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) ("A prisoner's concession to nonexhaustion is a valid ground for dismissal . . . ."), *overruled on other grounds by Albino*, 747 F.3d at 1166. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes*, 621 F.3d at 1004 (citing *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002)).

Thus, for all the reasons discussed, the Court finds Plaintiff's Complaint must be dismissed in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). *See Lopez*, 203 F.3d at 1126–27; *Rhodes*, 621 F.3d at 1004.

### E. Leave to Amend

Because Plaintiff is proceeding without counsel, and he has now been provided with "notice of the deficiencies in his complaint," the Court will also grant him an opportunity to amend. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).[4]

## IV. Plaintiff's Motion for Preliminary Injunction

Finally, Plaintiff also requests a preliminary injunction and/or protective order allowing him to "send outgoing mail from CEN to attorneys, state bar, the Chief of Inmate

///

---

[4] Plaintiff is cautioned that *all* claims re-alleged in his Amended Complaint must be exhausted pursuant to 42 U.S.C. § 1997e(a) prior to its filing. *See Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014).

Appeals Branch for the CDCR or anyone identified as persons or employees of persons with whom inmates may correspond confidentially." (ECF No. 5 at 1.)

Procedurally, a federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend"). The court may not attempt to determine the rights of persons not before it. *See, e.g.*, *Hitchman Coal & Coke Co. v. Mitchell*, 245 U.S. 229, 234–35 (1916); *Zepeda v. INS*, 753 F.2d 719, 727–28 (9th Cir. 1983). Pursuant to Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)–(C).

Substantively, "'[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, __ U.S. __, 135 S. Ct. 2726, 2736–37 (2015) (quoting *Winter v. Nat. Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

First, because Plaintiff's Complaint has not survived the initial *sua sponte* screening required by 28 U.S.C. § 1915(e)(2) and § 1915A, the United States Marshal has not yet been directed to effect service on his behalf, and the named Defendants have no actual notice of either of Plaintiff's Complaint or his Motion for a Preliminary Injunction. Therefore, the Court cannot grant Plaintiff injunctive relief because it has no personal jurisdiction over any Defendant at this time. *See* Fed. R. Civ. P. 65(a)(1), (d)(2); *Murphy Bros., Inc.*, 526 U.S. at 350; *Zepeda*, 753 F.2d at 727–28. A district court has no authority

to grant relief in the form of a temporary restraining order or permanent injunction where it has no jurisdiction over the parties. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("Personal jurisdiction, too, is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication.") (citation and quotation omitted)).

Second, in conducting its initial *sua sponte* screening of Plaintiff's Complaint, the Court has found it fails to state a claim upon which relief can be granted, and has dismissed it without prejudice pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Therefore, Plaintiff has necessarily failed to show, for purposes of justifying preliminary injunctive relief, any likelihood of success on the merits of his claims at this time. *Id.*; *see also Asberry v. Beard*, Civil Case No. 3:13-cv-2573-WQH JLB, 2014 WL 3943459, at *9 (S.D. Cal. Aug. 12, 2014) (denying prisoner's motion for preliminary injunction because his complaint was subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and therefore he had not shown he was "likely to succeed on the merits" of any claim, that "the balance of equities tip[ped] in his favor," or the issuance of an injunction would serve the public interest (citing *Winter*, 555 U.S. at 20)).

Finally, Plaintiff has not alleged, and cannot yet demonstrate that he is or will be subject to immediate and irreparable harm if an injunction does not issue. To meet Federal Rule of Civil Procedure 65's "irreparable injury" requirement, Plaintiff must do more than simply allege imminent harm; he must demonstrate it. *Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). This requires he allege "specific facts in an affidavit or a verified complaint [which] clearly show" a credible threat of "immediate and irreparable injury, loss or damage." Fed R. Civ. P. 65(b)(A). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* at 674–75.

Thus, because Plaintiff has failed to serve the required notice upon the adverse parties, has not shown a likelihood of success on the merits, and has offered only speculative allegations of harm which are neither immediate nor irreparable, the Court

**DENIES** his Motion for Preliminary Injunction and/or Protective Order (ECF No. 5) and finds he is not entitled to the extraordinary injunctive relief he seeks. *See Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) ("The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it.").

## V. Conclusion and Order

Based on the foregoing the Court:

(1) **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2);

(2) **DIRECTS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by garnishing monthly payments from his account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION;

(3) **DIRECTS** the Clerk of the Court to serve a copy of this Order on Scott Kernan, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

(4) **GRANTS** Plaintiff's Motion for Leave to File Excess Pages (ECF No. 3);

(5) **DENIES** Plaintiff's Motion for Preliminary Injunction and/or Protective Order (ECF No. 5); and

(6) **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and **GRANTS** him forty-five (45) days leave from the date of this Order in which to file an Amended Complaint which cures all the noted pleading deficiencies. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*

17

3:16-cv-03079-JLS-PCL

*v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "consider[ed] . . . waived if not repled").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: May 16, 2017

Hon. Janis L. Sammartino
United States District Judge