# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVIE J. STEVENSON,<br><br>                    Plaintiff,<br>v.<br><br>JEFFREY BEARD, Ph.D., et al.,<br>                    Defendants. | Case No.: 3:16-cv-03079-JLS-PCL<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE:**<br><br>**DEFENDANTS' MOTION TO DISMISS** |

     Before the Court is Defendants' motion to dismiss, filed on January 8, 2018, arguing the first claim ("Claim One") of Plaintiff's first amended complaint ("FAC"), (Doc. 8), and defendants S. Kernan and R. Madden should be dismissed. (Doc. 32.) Plaintiff filed his FAC on June 8, 2017, making multiple claims: (1) Plaintiff and other inmates housed in California state prisons have been deprived of their due process rights as a result of the California Department of Corrections and Rehabilitation (CDCR) amending statutes governing law libraries in prisons; (2) Plaintiff's rights were violated when Centinela State Prison staff opened his legal mail out of his presence; (3) Plaintiff was subject to retaliation by prison staff in that he was not allowed to mail outgoing documents to courts, attorneys, or the California Innocence Project; (4) Plaintiff's rights have been violated because Centinela's litigation coordinator has withheld from Plaintiff an audio CD recording of an allegedly exculpatory witness statement; and (5) altogether,

the above deprivations have effectively denied Plaintiff the right to access the courts to present a "non-frivolous claim." (Doc. 8.)

Defendants move to dismiss Plaintiff's FAC on the following grounds: (1) Claim One is precluded under res judicata because Plaintiff has previously litigated the claim in a petition for writ of habeas corpus; and (2) defendants Kernan and Madden are not liable on any claim because supervisory authority is not sufficient to give rise to liability under 28 U.S.C. section 1983 ("Section 1983"). (Doc. 32.) To support the first argument, Defendants have moved the Court to take judicial notice of the California Court of Appeal and California Supreme Court's denials of Plaintiff's previously filed petitions. (Doc. 32-2.) Plaintiff also filed a motion for judicial notice of his actual petitions filed with these respective courts. (Doc. 39; *see also* Doc. 38, Exhibits 1-3.)

The Honorable Janis L. Sammartino has referred the matter to the undersigned Judge for Report and Recommendation pursuant to 28 U.S.C. section 636(b)(1)(B) and Local Civil Rule 72.1(c)(1)(d). After a thorough review of the pleadings and supporting documents, this Court recommends the motion to dismiss be **GRANTED IN PART**.

## II. BACKGROUND[1]

Plaintiff is currently incarcerated at Centinela State Prison, where Plaintiff has conducted legal research on a regular basis.

### A. Amending the Statutes Governing Prison Law Libraries

During Plaintiff's incarceration, Plaintiff has endeavored to challenge his conviction through various appeals, motions, and petitions. In doing so, Plaintiff has used, and continues to use, the law library at Centinela. Prior to 2014, Centinela had a law library which consisted of both law books and three computers which inmates could use to conduct electronic legal research. (Doc. 8 at 7.) These materials were published by Westlaw. Plaintiff was able to use these materials efficiently because of the key cite

---

[1] The following facts are taken from Plaintiff's FAC, (Doc. 8), and are accepted as true for the purpose of this motion. *See Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (In ruling on a motion to dismiss, the court must "accept all material allegations of fact as true").

2

3:16-cv-03079-JLS-PCL

system which Westlaw uses to organize its materials. (*Id*. at 9.) Each week Plaintiff desired to conduct legal research, Plaintiff was allotted two hours in the law library, during which Plaintiff could conduct electronic research or research in physical books. (*Id*. at 7-8.) These sessions were generally shared with 14 other inmates. (*Id*. at 9.)

On January 1, 2014, however, Defendant Jeffrey Beard implemented a new rule which switched the state prisons' law libraries from using Westlaw materials to Lexis materials. (Doc. 8 at 7.) Beard claimed these two publishers' materials were equivalent to one another. When Beard implemented this change, Beard also stopped the standing order of updated Westlaw books. (*Id*. at 8.) Because Lexis was fully available electronically, there presumably was no longer any need for the physical books to be routinely updated.

While the new Lexis materials are available electronically, according to Plaintiff, conducting legal research is now significantly more complicated than before for more reasons than merely having to learn a new system. First, Centinela only has a small number of computers provided for inmates to conduct legal research. In Plaintiff's unit of Centinela specifically, there were only three computers when the change was originally implemented. (*Id*. at 9.) Since then, Centinela has added three additional computers to Plaintiff's unit's law library. (*Id.* at 105.) This has not remedied the issue completely, though. Centinela's law library has three two-hour long sessions where 15 inmates are allowed to go to the law library and conduct legal research. (*Id*.) Even with the increased number of computers, inmates still outnumber the computers. Previously, this was not an issue because those inmates who were unable to use a computer could perform research using the available books. Now, however, those same books are almost a decade out of date, and thus no longer prove reliable sources. (*Id*. at 10.)

To combat the issue of too few computers being available, Beard also implemented a rule stating each inmate is only to use a computer to conduct legal research for 30 minutes at a time. (*Id*. at 17.) This time limitation would allow for each of the 15 inmates to be able to use the computer for at least 30 minutes each week. However, at Centinela,

there is no enforcement of this time limitation, and therefore, those inmates who do not arrive to the law library first are left at the mercy of those inmates who do arrive first and are able to secure a computer. (*Id*.) According to Plaintiff, these early arriving inmates do not follow the 30 minute time limitation, and no prison staff enforces the rule. This leaves nine of the 15 inmates with two hours to conduct legal research in outdated books.

Plaintiff now argues Beard's actions in transitioning prisons from Westlaw to Lexis, and the following actions taken to remedy the crop of issues which arose as a result of the switch deprived Plaintiff of his liberty interest in having a law library where Plaintiff can conduct meaningful legal research. (*Id*. at 5.) Specifically, Plaintiff claims all inmates have a right to a law library and related services. (*Id*.) In switching from Westlaw to Lexis, thereby taking away the keycite system as well as requiring all research be conducted electronically, Plaintiff claims Defendants have deprived Plaintiff of his due process rights. (*Id*.)

### **B. Mailroom Issues**

During Plaintiff's incarceration, Plaintiff has recently had issues with mailroom staff handling his mail inappropriately. On May 27, 2016, Plaintiff alleges he received mail from the California Innocence Project, and the envelope was "clearly stamped 'Confidential Legal Mail.'" (*Id*. at 19.) Despite this stamp, however, upon inspecting the envelope, Plaintiff discovered there were affidavits, declarations, and documents which had been removed from the envelope. (*Id*.) Based upon this, Plaintiff argues the mailroom staff must have opened his mail from the California Innocence Project, removed the documents from the envelope, and read the documents therein outside the presence of Plaintiff. (*Id*.) Plaintiff notified prison staff of this mishandling of his mail immediately. (*Id*.)

This type of mishandling of Plaintiff's mail happened a second time on June 27, 2016. That time, Plaintiff had received mail from the Los Angeles County District Attorney's Office. This letter was also clearly marked as confidential legal mail. (*Id*.) Again, Plaintiff's mail had been opened by the mailroom staff, and Plaintiff concluded

4

the mailroom staff had read his mail out of his presence. (*Id*.) After the second incident, Plaintiff filed an inmate complaint form alleging his mail was being opened outside Plaintiff's presence, despite it being clearly marked as legal confidential mail. (*Id*. at 19-20.)

After Plaintiff had filed his complaint, this mishandling occurred a third time on January 31, 2017. This third time, Plaintiff was given mail delivered from the Superior Court of San Diego. (*Id*. at 20.) The envelope containing the mail, however, was not an official envelope from the Superior Court, nor did it have an address or any stamps on it. (*Id*.) The envelope did have multiple stickers on the front, which both Plaintiff and a prison correctional officer found odd. Upon opening the envelope, Plaintiff knew the envelope contained legal confidential mail because a brief Plaintiff had filed was enclosed. (*Id*.) Plaintiff believes the original envelope had been opened by mailroom staff, the staff had read Plaintiff's mail, and the staff had put the mail into a new envelope. (*Id*.) After this incident, Plaintiff filed another inmate complaint. (*Id*.)

On May 16, 2017, Plaintiff's inmate complaints were denied at the first level. (*Id*.) Plaintiff then took the form to the mailroom in order to mail the complaint to the second level of review; however, when Plaintiff attempted to do so, the mailroom staff denied Plaintiff. (*Id*. at 21.) The mailroom staff specifically denied Plaintiff's inmate trust withdrawal form, citing the $0.00 balance in Plaintiff's inmate trust account. (*Id*. at 23.) In reality, Plaintiff had a paying job within Centinela and his inmate trust account had funds in it. (*Id*. at 167.) In disallowing Plaintiff to mail his appeal, the mailroom staff, according to Plaintiff, denied him the right to exhaust his claim in the administrative system. (*Id*.) Plaintiff believes the mailroom staff is retaliating against Plaintiff for filing the inmate grievance forms by not allowing him to mail documents out. (*Id*.)

**C. Post-conviction evidence**

After Plaintiff was convicted, Plaintiff filed a motion for post-conviction discovery for which an attorney was appointed to assist Plaintiff. During the pursuit of this discovery, Plaintiff was informed of audio CDs which had not been produced at trial. (*Id*.

at 29.) On these audio CDs were those witnesses who had testified against Plaintiff being coerced by the interviewing police officers to do so. (*Id.*) There were three of these audio CDs. Plaintiff's appointed counsel attempted to get the audio CDs to Plaintiff in Centinela, but Centinela's litigation coordinator declined to give the audio CDs to Plaintiff. The litigation coordinator cited rules disallowing inmates to have audio CDs in his denial of Plaintiff's request. (*Id.*) That the audio CDs dealt with Plaintiff's case was irrelevant to the litigation coordinator's decision. (*Id.*) Plaintiff argues this denial violated his right to due process, right to property, and right to access the courts.

## III. DISCUSSION

Defendants are now before this Court moving to dismiss Plaintiff's FAC based on two grounds: first, Claim One is barred by res judicata; and second, Kernan and Madden's supervisory authority is not sufficient to give rise to liability under Section 1983. (Doc. 32.) Plaintiff filed an extensive opposition to Defendants' motion which argues vehemently that no portion or defendant named in Plaintiff's FAC should be dismissed. (Doc. 38.)

### A. Legal Standard on Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all allegations of material fact pleaded in the complaint as true. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The Court must also construe the allegations in favor of the nonmoving party and draw all reasonable inferences from them in favor of the nonmoving party. *Id*. To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678, (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

As a general rule, a court freely grants leave to amend a complaint which has been dismissed. Fed. R. Civ. P. 15(a); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co.*, 806 F.2d at 1401 (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962)). When a court dismisses a *pro se* litigant's complaint, the court must provide the plaintiff with a statement of the deficiencies in the complaint. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623-624 (9th Cir. 1988).

**B. Judicial Notice**

Defendants requested the Court take judicial notice of the petitions for writ of habeas corpus Plaintiff has previously filed in the California state courts. (Doc. 32-2.) In

their request, Defendants include the case summary and docket entries for Plaintiff's petition filed in the California Court of Appeal. (*Id*. at 7-12.) This petition was filed on October 20, 2015 and the Court of Appeal recognized the matter as closed on November 6, 2015. (*Id*. at 7.) Additionally, Defendants included the same for the Supreme Court of California. (*Id*. at 15-17.) In that court, Plaintiff filed his petition on December 21, 2015, and the court recognized the matter as closed on June 29, 2016. (*Id*. at 15.) Plaintiff similarly requested the Court take judicial notice of the actual petitions filed. (Doc. 39; *see also* Doc. 38 at Exhibits 1-3.)

A court may take judicial notice of its own files and of documents filed in other courts for the purpose of determining whether a party's claims are barred by res judicata. *See*, *e.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002). In this case, the Court must consider whether Plaintiff's claims are barred by res judicata. Thus, the Court **GRANTS** both Plaintiff's and Defendants' requests for judicial notice.

### C. Claim Preclusion

Defendants argue res judicata is applicable here because Claim One "involve[s] the same parties, in the same locations, with the same actions for the same incident." (Doc. 32-1 at 5.) Because Plaintiff had previously filed petitions for writ of habeas corpus based on defendant Beard's amending the rules regarding prison libraries, Defendants contend Plaintiff is now barred from relitigating this same claim before this Court. Plaintiff, on the other hand, argues the previous petitions put forth a significantly different claim than Claim One. Additionally, Plaintiff argues he was not allowed to fully and fairly litigate his claim raised in his previous petition. (Doc. 38 at 24.)

Because the prior judgments were issued by state courts, state law on res judicata applies. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379-80 (1985). Under California law, res judicata is "an umbrella term encompassing both claim preclusion and issue preclusion." *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 823-24 (2015). "Claim preclusion arises if a second suit involves: (1) the same cause of action

8

(2) between the same parties (3) after a final judgment on the merits of the first suit. If claim preclusion is established, it operates to bar relitigation of the claim altogether." *Id.* at 824-25 (citations omitted). This bars not only claims adjudicated but also those which could have been brought but were not. *Thompson v. Ioane*, 11 Cal. App. 5th 1180, 1191 (2017).

### 1. Cause of Action

While federal courts determine whether two suits involve the same cause of action by applying the "same transaction or occurrence" or "common nucleus of operative facts" test, California courts do not. Instead, California courts will hold that two suits involve the same cause of action when they involve the same "primary right." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009). Under this theory "a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the defendant constituting a breach of that duty." *Mycogen v. Monsanto Co.*, 51 P.3d 297, 306 (Cal. 2002). "The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." *Id.* Thus, in California, "if two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009) (quoting *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170 (Ct. App. 1983)). "The critical focus of [the] primary rights analysis is the harm suffered." *Brodheim*, 584 F.3d at 1268 (citations and internal quotation marks omitted). California's primary rights theory can be complicated, and the Ninth Circuit has cautioned against wielding the "primary right brush . . . too carelessly" and noted the possibility that "different primary rights may be violated by the same wrongful conduct" under certain circumstances. *San Diego Police Officers' Ass'n*, 568 F.3d at 734 (internal quotation marks omitted).

//

Here, Defendants assert Claim One is based on the same primary right which was previously litigated by Plaintiff in his petitions originally filed in the Superior Court of San Diego and pursued all the way up to the California Supreme Court.[2] In these petitions, Plaintiff argued that various California Government Code sections created state law entitlements for prisoners; namely, entitlements to adequate prison libraries and procedures concerning the use of those libraries. (Doc. 38-2 at 69.) When defendant Beard, named in the petition as well, amended these procedures, Plaintiff asserts he and other inmates were deprived of these state law entitlements. (*Id*.) Plaintiff particularly argues he is deprived of these entitlements because of the discontinuation of physical law books, the new 30 minute time limit for use of the computers to conduct legal research, and the overall shift from Westlaw to Lexis. (*Id*. at 68.) Plaintiff alleges the deprivations have violated Plaintiff's due process and equal protection rights under both the state and federal constitutions. (Doc. 38-1 at 3.)

In Plaintiff's current FAC, Plaintiff's count one alleges the very same thing: defendant Beard's various changes to the procedures concerning the prison libraries deprived Plaintiff of his liberty interests in having an adequate prison library and adequate access thereto. (Doc. 8 at 5, 11.) While Plaintiff classifies his state law entitlements as liberty interests in his current suit, Plaintiff clearly is referencing the same California Government Code sections which he asserts give rise to certain rights. (*See id*., where Plaintiff lists the civil right having been violated as "Due Process Clause of the

---

[2] Defendants also argue Claims One and five within Plaintiff's FAC are the same, and claim five only serves as a "fleshe[d] out" version of Claim One. (Doc. 32-1 at 3 n.1.) Plaintiff's claim five in fact alleges that the preceding four claims (the amendment to prison rules combined with legal mailing issues and evidentiary disputes) have collectively deprived Plaintiff of the right to access the courts. (Doc. 8 at 32.) Defendants' confusion seems to stem from Plaintiff's recitation of the preceding claims in the first seven paragraphs of his allegations for claim five. (*See id*. at 32-33.) However, beginning with the eighth paragraph, Plaintiff explains the cumulative effect of the allegations and that because of the alleged deprivations, Plaintiff has been unable to present a "non-frivolous claim" to the courts. (*Id*. at 33-34.) Thus, the Court finds Defendants' analysis of Claims One and five together for their preclusion is incorrect. The Court therefore only analyzes whether or not Plaintiff's previous suits preclude Claim One from being litigated again before this Court. The fifth claim will be left untouched by this analysis.

14th Amendment, state law entitlement "Liberty Interest.") Ultimately, Plaintiff again argues his due process rights under both the state and federal constitutions were violated by Defendant Beard's actions. (Id. at 12.)

Clearly, Plaintiff here is asserting that Defendant Beard's actions deprived him of his Fourteenth Amendment rights. Also just as clear is that Plaintiff has previously made these assertions to the California state court system. (*See* Docs. 38-1, 38-2.) Because these claims are virtually identical, they must be considered the same claim for purposes of res judicata. Therefore, this requirement for preclusion has been met.

### 2. *Parties*

For claim preclusion to apply under California law, both actions must have the same parties, or there must be privity between the parties in both actions. "Whether someone is in privity with the actual parties requires close examination of the circumstances of each case." *Rodgers v. Sargent Controls & Aerospace*, 136 Cal. App. 4th 82, 91 (2006). "This requirement of identity of parties or privity is a requirement of due process of law." *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 874 (1978), *overruled on other grounds by Ryan v. Rosenfeld*, 2017 Cal. LEXIS 4810, *3 (Cal. June 15, 2017).

In Plaintiff's petitions, although the caption does not list any actual defendants Plaintiff includes a section in the body of the petitions entitled "PARTIES" wherein Plaintiff names himself, Beard, and Madden. (Doc. 38-1 at 6.) Similarly, in the current suit, Plaintiff names both Beard and Madden as defendants, among others. (Doc. 8 at 3-4.) Therefore, the parties are the same in each of the suits, and this requirement for preclusion is also met.

### 3. *Final Judgment on the Merits*

Plaintiff argues Claim One cannot be subject to claim preclusion because his petition for writ of habeas corpus was denied summarily by the state courts. (Doc. 38 at 8-9.) Plaintiff has cited case law which holds a summary denial of a petition for writ of habeas corpus is not considered a final ruling on the merits for purposes of claim preclusion. (*Id.* citing *Gomez v. Superior Court*, 54 Cal. 4th 293, 305 n.6 (2012).)

11

Plaintiff goes to lengths to show the denial of his petition at the state level does not qualify as a final judgment on the merits because the denial is a summary denial. However, regardless of Plaintiff's arguments to this extent, Plaintiff is incorrect in classifying the Court of Appeal's treatment of his petition as a summary denial. A summary denial is a denial of a petition, or other request to the court, without a statement of reasons. *See Amalgamated Bank v. Superior Court*, 149 Cal. App. 4th 1003, 1020 (Ct. App. 2007). Thus, when a court issues a summary denial, the denial will consist of one simple sentence to the effect of, "The petition is denied." (*See*, *e.g.*, Doc. 32-2 at 19, where the California Supreme Court issued a summary denial of Plaintiff's petition.) The Court of Appeal here issued a reasoned decision which was included on the docket. (*See* Doc. 32-2 at 9-10.) This decision clearly was based on the merits of the claim. (*Id*. at 9, where the Court of Appeal denied Plaintiff's request to file documents under seal, and then ruled "on the merits" of Plaintiff's petition.) Contrarily, the Supreme Court did issue a summary denial of Plaintiff's petition. (*Id*. at 19.) Therein, the court issued a single sentence decision on the docket stating, "Petition for writ of H.C. denied." (*Id*.) This is clearly a summary denial of the petition.

However, this summary denial does not mean the decision was not on the merits. In fact, the United States Supreme Court has held when a "federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of an indication of state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86 at 99 (2011). In this case, there are no such state law procedural principles which would overcome this presumption. Therefore, the decision on Plaintiff's state court petitions are final judgments on their merits.

Given that all three requirements for claim preclusion have been satisfied, Plaintiff's Claim One may not be relitigated before this Court. Accordingly, Plaintiff's Claim One should be dismissed on the grounds of res judicata. Defendants additionally moved the Court to dismiss defendant Beard from the suit. (Doc. 32-1 at 5.) At this point,

defendant Beard cannot be dismissed from the suit because he is still subject to liability for claim five. The Court therefore **GRANTS** Defendants' motion to dismiss Claim One on res judicata grounds; but **DENIES** Defendants' motion to dismiss defendant Beard from the suit entirely.

### D. Supervisory Liability

Defendants next argue that defendants Kernan and Madden should be dismissed from the suit because Plaintiff alleges these defendants' liability arises only from their supervisory statuses. (Doc. 32-1 at 6.) Specifically, Defendants contend that in order for Plaintiff to properly assign liability to both Kernan and Madden, Plaintiff must show these defendants affirmatively participated in the conduct causing the alleged deprivations, participated in another's affirmative acts doing the same, or failed to act to remedy the alleged deprivations where action was legally required. (*Id*. citing *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).) Defendants do not believe Plaintiff has shown either Kernan or Madden ever took, or failed to take, any such action. Without any such facts, Plaintiff cannot validly assert liability against Kernan or Madden.

Conversely, Plaintiff argues both Kernan and Madden fall squarely into the third method through which Section 1983 liability can be imposed: these defendants were made aware of the alleged deprivation through Plaintiff's inmate appeals, but, despite being on notice, the defendants took no action to remedy Plaintiff's alleged deprivations. (Doc. 38 at 27.) Instead, Kernan and Madden "acknowledged that there was a taskforce created to correct the issue," but neither Kernan, Madden, nor the taskforce took any action in order to cure the violation. (*Id*.) Plaintiff contends this failure to act satisfies the third way to establish Section 1983 liability, and therefore Kernan and Madden are open to liability in this case.

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). An individual government defendant

13

"causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) (citations omitted); *see also Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (same) (citing *id*.). Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

Similarly, a government official acting in a supervisory capacity may be held individually liable under Section 1983 if the supervisor's own misconduct caused a constitutional deprivation. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (citing *Iqbal*, 556 U.S. at 676); *see also Starr*, 652 F.3d at 1207 ("We have long permitted plaintiffs to hold supervisors individually liable in [Section] 1983 suits when culpable action, or inaction, is directly attributed to them."), *cert. denied*, 566 U.S. 982 (2012). More specifically, a supervisor "causes" a constitutional deprivation if he (1) personally participates in or directs a subordinate's constitutional violation; or (2) the constitutional deprivation can otherwise be "directly attributed" to the supervisor's own culpable action or inaction, even though the supervisor was not "physically present when the [plaintiff's] injury occurred." *See Starr*, 652 F.3d at 1206-07; *see also Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013) (supervisor may be held liable under Section 1983 only if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation") (citations and internal quotation marks omitted).

Further, "a supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations or knew of the violations and failed to act to prevent them." A supervisor is not liable under Section 1983 solely for the acts of another because "there is no respondeat superior liability under [S]ection 1983."

14

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) *citing Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984).

Plaintiff specifically alleges Kernan and Madden are liable based on their inaction after reviewing Plaintiff's appeals. (Doc. 38 at 26.) Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). *See Revis v. Syerson*, 2015 U.S. Dist. LEXIS 17532, *5 (E.D. Cal. 2015); *Hernandez v. Cate*, 918 F.Supp.2d 987, 1018 (C.D. Cal.2013) ("Plaintiff cannot state a Section 1983 claim based solely on [defendants'] role in the inmate appeals process."); *Lamon v. Junious*, 2009 U.S. Dist. LEXIS 97003, *4 (E.D. Cal. 2009) ("[T]he involvement of prison personnel in reviewing and issuing decisions on Plaintiff's inmate appeals does not provide a basis for the imposition of liability on them for the conduct of others."). *Cf. Reed v. Brackbill*, 2008 U.S. Dist. LEXIS 82345 (D. Nev. July 2, 2008) (defendant found to have personally participated by reviewing and signing various grievances filed by plaintiff thereby allowing constitutional violations to continue).

While there are limited circumstances where reviewing an appeal may lead to liability, such liability remains based on personal participation. In order to show personal participation sufficient to give rise to Section 1983 liability, Plaintiff must show these defendants were on notice of the alleged constitutional violations and failed to correct them, thereby showing the defendants to have contributed to the violations. *Cook v. Cate*, 2014 U.S. Dist. LEXIS 113135, *25 (N.D. Cal. Aug. 14, 2014). In other words, personal participation in the alleged violation is required, meaning that defendants Kernan and Madden, in their roles as supervisors, must have known of the violations and failed to act. Plaintiff has shown this for only one defendant.

In the memorandum decision on Plaintiff's second level appeal, Madden described his perception of Plaintiff's claims, stating "you also claim that your due process rights and the First and Fourteenth Amendments were violated." (Doc. 8 at 180.) Although Madden was clearly describing Plaintiff's claim, and not engaging in any legal analysis

15

thereof, this memorandum makes clear that Madden was in fact on notice of Plaintiff's alleged constitutional violations.

Presumably, reviewers at each level of appeal conduct personal reviews of the appeals before drafting a letter either granting or rejecting the appeal. This personal review of the appeal amounts to personal participation in the Plaintiff's alleged constitutional injury because by conducting a review of Plaintiff's claims, which clearly articulated the constitutional violations, Madden was adequately put on notice of the allegations and failed to act in order to remedy such. Therefore, Madden's failure to act caused Plaintiff to further suffer the alleged violation. *Cook*, 2014 U.S. Dist. LEXIS 113135, *25. Had these reviews recognized the constitutional violations as such, Madden could have sufficiently remedied Plaintiff's injuries. However, Madden took no such action. This failure to take action fulfills the requirement for Section 1983 liability to arise by knowing of a constitutional violation and failing to provide a remedy thereto.

Contrarily, Kernan has been sued in his capacity as the Secretary of CDCR. (*Id.* at 4.) Plaintiff, however, presented no facts to indicate Kernan personally participated in or directed Plaintiff's alleged constitutional violation. In fact, Plaintiff presents no facts showing Kernan was ever even aware of Plaintiff's claim before Plaintiff filed the present suit. Kernan was not involved in the withholding of the audio CDs from Plaintiff, nor was Kernan involved in the grievance process that followed this withholding. Instead, Plaintiff alleges Kernan is liable because Kernan, as well as Madden, was "in a position to correct the violation and ha[s] failed to do so, thus establishing [his] liability. . . ." (Doc. 38 at 27.) Without showing Kernan had knowledge and therefore was on notice of Plaintiff's alleged constitutional violation, Plaintiff cannot properly assert Kernan had a responsibility to remedy the alleged deprivation. It follows then that Kernan cannot be liable for Plaintiff's alleged deprivation.

Accordingly, the Court **GRANTS** Defendants' motion as to defendant Kernan; however, the Court **DENIES** Defendants' motion as to defendant Madden.

//

16

3:16-cv-03079-JLS-PCL

# IV. CONCLUSION

This Report and Recommendation is submitted to the Honorable Janis L. Sammartino, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c)(1)(c) of the United States District Court for the Southern District of California. For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **GRANTING IN PART** the Motion to Dismiss. Any party may file written objections with the Court and serve a copy on all parties on or before **May 14, 2018**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **May 21, 2018**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: April 26, 2018

Hon. Peter C. Lewis
United States Magistrate Judge