UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVIE J. STEVENSON,<br><br>          Plaintiff,<br><br>v.<br><br>JEFFREY BEARD, Ph.D., et al.,<br><br>          Defendants. | Case No.: 16-CV-3079 JLS (RBM)<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, AND**<br>**(2) GRANTING PLAINTIFF LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>(ECF No. 95) |

  Plaintiff Stevie J. Stevenson, a prisoner currently incarcerated at Solano State Prison ("Solano"), proceeds pro se and *in forma pauperis*, *see* ECF No. 6, on a First Amended Complaint ("FAC," ECF No. 8) filed pursuant to 42 U.S.C. § 1983. There are currently five Defendants: Jeffrey Beard, former Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); C. Walker, a mailroom staff member at Centinela State Prison ("Centinela"); C. Bell, a mailroom supervisor at Centinela; N. Telles, a litigation coordinator at Centinela; and R. Madden, Warden of Centinela.[1] *See* ECF Nos. 8, 61.

---

[1] The Court's July 11, 2018 Order dismissed S. Kernan, the former Secretary of CDCR, as a Defendant. *See* ECF No. 61.

1

Plaintiff filed the instant Motion for Preliminary Injunction or Temporary Restraining Order ("Mot.," ECF No. 95) seeking to stop CDCR from destroying and/or removing all law books from its law libraries. The Court accepted the Motion *nunc pro tunc* to March 7, 2019.[2] *See id.* The Court held its ruling in abeyance pending Plaintiff's appeal of this Court's Order dismissing Claim One of the First Amended Complaint, *see infra* pages 4–5, which asserted a cause of action relating to deprivation of a state-created liberty interest affording inmates adequate access to law libraries. *See* FAC at 5–18. The Motion is now ripe, as the Ninth Circuit denied Plaintiff's appeal. *See* ECF Nos. 101, 104. Having considered the Parties' arguments and the applicable law, the Court **DENIES** Plaintiff's Motion.

## BACKGROUND

This case has a lengthy and complicated procedural history with intermingled causes of action regarding law library access. Given that the instant Motion directly concerns law library access and an underlying access-to-court cause of action, the Court outlines the procedural history.[3]

### I. First Amended Complaint and Motion to Dismiss

On June 8, 2017, Plaintiff filed the operative First Amended Complaint asserting the following causes of action: (1) Plaintiff and other inmates housed in California state prisons have been deprived of their due process rights as a result of CDCR amending statutes governing law libraries in prisons; (2) Plaintiff's rights were violated when Centinela staff opened his legal mail outside of his presence; (3) Plaintiff was subject to

---

[2] Plaintiff's moving papers contained the following discrepancies: (1) failure to file a memorandum of points and authorities in support of the Motion as a separate document; and (2) failure to state the time and date of the hearing on the Motion. *See* S.D. Cal. CivLR 5.1(j); 7.1(b), (f). The Court accepted the Motion despite such discrepancies. (ECF No. 98.)

[3] Portions of the Procedural History are incorporated from Magistrate Judge Peter C. Lewis' Report and Recommendation of Defendants' Motion to Dismiss, *see* ECF No. 47, which the Court fully adopted in its July 11, 2018 Order. *See* ECF No. 61 at 2.

retaliation by Centinela prison staff in that he was not allowed to mail outgoing documents to courts, attorneys, or the California Innocence Project; (4) Plaintiff's rights have been violated because Centinela's litigation coordinator has withheld from Plaintiff an audio CD recording of an allegedly exculpatory witness statement; and (5) altogether, the cumulative effect of these deprivations have effectively denied Plaintiff the right to access the courts to present a "non-frivolous claim." *See* ECF Nos. 8, 47.

As to Claim One, Plaintiff contended law library changes rendered the library ineffective and prevented Plaintiff from conducting meaningful legal research to challenge "sentences . . . convictions . . . and conditions of confinement." FAC at 5–10, 13. The First Amended Complaint cited Plaintiff's petitions for writ of habeas corpus challenging these same issues. *Id.* at 10–11; *see also* ECF No. 32-2.

On January 18, 2018, all named Defendants filed a Motion to Dismiss portions of the First Amended Complaint. *See generally* ECF No. 32. Defendants moved to dismiss Claims One and Five as barred by res judicata/claim preclusion. *Id.* at 3–5. As to res judicata/claim preclusion, both parties requested the Court take judicial notice of Plaintiff's previously-filed petitions for writ habeas corpus challenging Defendant Beard's actions in amending statutes governing law libraries in prisons. *See* ECF Nos. 32-2, 38-1, 38-2, 39. Given these previously filed petitions, Defendants argued Claim One "involve[d] the same parties, in the same locations, with the same actions for the same incident." ECF No. 32 at 5. Defendants also sought dismissal of Defendant Beard based upon this same rationale. *Id.* at 3–5. Defendants contended Claim Five should be treated the same as Claim One, as it merely fleshed out Claim One's allegations. *Id.* at 3 n.1. Defendants also moved to dismiss Defendants Kernan and Madden based upon their lack of personal participation in any alleged constitutional violation. (*Id.* at 5-9.)

**II.   The Orders on Defendants' Motion and Plaintiff's Motion for Reconsideration**

On April 26, 2018, Magistrate Judge Lewis issued a Report and Recommendation on Defendants' motion to dismiss recommending dismissal of Claim One based upon res judicata grounds. ECF No. 47. Ultimately, he recommended, Plaintiff's habeas petition

filed in the California Court of Appeal and the Supreme Court of California barred re-litigation of Claim One. *Id.* at 7–13. But, Magistrate Judge Lewis left Claim Five "untouched" by the res judicata analysis. *Id.* at 10 n.2. While Defendants argued that Claims Five and One were the same, Judge Lewis disagreed. *Id.* Consequently, Magistrate Judge Lewis did not analyze Claim Five and therefore recommended denying the motion to dismiss as to Claim Five. *Id.*

As to Defendants' request to dismiss Defendant Beard from the litigation, Magistrate Judge Lewis recommended denial of the motion to dismiss on this ground because Defendant Beard is named in Claim Five. *Id.* at 12. On the other hand, Magistrate Judge Lewis recommended dismissal of Defendant Kernan because the First Amended Complaint contained "no facts to indicate Kernan personally participated in or directed Plaintiff's alleged constitutional violation" or "showing Kernan was ever even aware of Plaintiff's claim before Plaintiff filed the present suit." *Id.* at 16. Finally, Magistrate Judge Lewis recommended denying the motion to dismiss as to Defendant Madden. *Id.*

On July 11, 2018, the Court adopted Magistrate Judge Lewis' report and recommendation in full and granted Plaintiff an additional thirty days to file a second amended complaint to cure the deficiencies relating to Plaintiff's claims against Defendant Kernan. ECF No. 61 at 8. The Court cautioned that, "[i]f Plaintiff chooses not to file a second amended complaint within thirty days, the case will proceed on Plaintiff's remaining claims." *Id.* at 9.

After the Court dismissed Claim One and Defendant Kernan, Plaintiff filed a Motion for Reconsideration and an appeal before the Ninth Circuit. ECF Nos. 63, 64. On August 2, 2018, the Court issued an Order: (1) requesting Defendants to file a response to Plaintiff's Motion for Reconsideration; and (2) vacating the deadline for Plaintiff to file a second amended complaint. ECF No. 69. The Court's Order stated it will "re-set the filing deadline after it rules on Plaintiff's motion for reconsideration." *Id.*

On September 14, 2018, the Ninth Circuit dismissed Plaintiff's appeal for lack of jurisdiction. ECF No. 81. On February 25, 2019, this Court denied Plaintiff's Motion for

Reconsideration, *see* ECF No. 89, which Plaintiff appealed on March 11, 2019. *See* ECF No. 91. The Ninth Circuit dismissed Plaintiff's appeal on November 7, 2019. *See* ECF Nos. 104–05. Now that Plaintiff's motion for reconsideration is fully resolved, the Court resets the time in which Plaintiff may file a second amended complaint as outlined herein. *See supra* page 12.

### III. The Instant Motion

The instant Motion, accepted *nunc pro tunc* to March 7, 2019, *see* ECF No. 94, seeks an order stopping CDCR from removing and/or destroying "all law books once protected by the *Gilmore v. Lynch* . . . injunction." *See* Mot. at 3 (citing *Gilmore*, 319 F. Supp. 105 (N.D. Cal. 1970). Plaintiff seeks to stop "Defendant Kernan and/or his agents from ignoring [the] clearly established ruling." *Id.* at 4. Plaintiff contends CDCR's promulgated regulations and the underlying *Gilmore* decision continue to impose a "non-discretionary duty . . . not to destroy or remove the law books in its prisons." *Id.* at 3 (citing *Murphy v. Smith*, 583 U.S. ___, 138 S. Ct. 784, 787 (2017)).

To support the Motion, Plaintiff attaches the following exhibits: an Inmate 602 Appeal (the "602 Appeal") concerning Centinela's law library resources; a First-Level Appeal Response (the "Response") executed by a supervisor at Centinela, including a copy of a news release cited within the Response pertaining to termination of the *Gilmore* injunction; Plaintiff's appeal of the Response; and various provisions from the California Code of Regulations pertaining to prison law libraries and the resources provided within the libraries. *See* Mot Exs. 0–3 at 7–22; *see also* 15 C.C.R. § 3124.

Plaintiff submitted the 602 Appeal while housed at Centinela. Mot. Ex. 0 at 7–12. The 602 Appeal requested, in part, legal materials from Sacramento and a case with key numbers allowing Plaintiff to request additional cases pertaining to that key number topic. *Id.* The 602 Appeal states that Centinela's Senior Law Librarian advised Plaintiff that he "could not ask for a case with key numbers." *Id.* at 10; *see also* FAC at 33 ¶ 4 ("Centinela State Prison Senior Librarian J. Roher . . . deprived [Plaintiff] of the right to use legal resource material to conduct meaningful and timely research to prepare his legal

5

material."). Centinela's Response stated, "West[l]aw is one publisher of cases and Lexis[N]exis is another. Lexis and West both take case law as written . . . and add their own annotations . . . [Plaintiff] is not entitled to one particular version of case law . . . so we are not providing him the West version." Mot. Ex. 1 at 14–15.

Plaintiff cites the 602 Appeal in the instant Motion. Plaintiff claims his 602 Appeal requested Kernan and his staff to take notice of the *Gilmore* decision and its requirement to provide law books to inmates. Mot. at 2; *see also* Ex. 0 at 10. The Response stated, "[i]nitially law library books were to be physically kept until the year 2020, [but] each institution was given the option to dispose of them earlier." Mot. Ex. 1 at 15. Plaintiff contends this Response establishes CDCR's position that it may "remove and destroy all law books in its institutions" in violation of *Gilmore*. Mot. at 2–3; Mot. Ex. 1 at 14–15. Plaintiff appealed the Response on February 12, 2019, arguing *Gilmore* requires law books to remain in prison libraries. Mot. Ex. 0 at 9.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal citation omitted). Indeed, it may only be awarded upon a "clear showing that the plaintiff is entitled to such relief." *Id.* at 22 (citation omitted); *see also Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (it is movant's burden of persuasion to make a clear showing of entitlement to preliminary injunctive relief) (citation omitted). When a request for injunctive relief against a government agency is involved, the Court must also "observe the requirement that the government be granted the widest latitude in the dispatch of its own affairs." *Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001) (internal quotations and citations omitted); *see also Lewis v. Casey*, 518 U.S. 343, 349 (1996) (it is not the Court's role to shape government institutions to comply with the laws and Constitution).

A threshold requirement for preliminary injunctive relief is "a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d

6

631, 636 (9th Cir. 2015). A sufficient nexus between the injury claimed in the motion and complaint exists when the "preliminary injunction would grant relief of the same character as that which may be granted finally." *Id.* (citing *De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1989)). Notably, there is no basis to grant an injunction when the injunction "deals with a matter lying wholly outside the issues in the suit." *De Beers*, 325 U.S. at 220.

As to the merits of a motion for preliminary injunctive relief, the party seeking relief must demonstrate four factors: "[plaintiff] is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, *supra*). In circumstances where the moving party is incarcerated, the well-established standard for injunctive relief must be viewed in conjunction with the requirements of the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626. Before granting any prospective relief under the PLRA, the Court must find that the prospective relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *See* 18 U.S.C. § 3626(a)(1). In doing so, the Court must also give "'substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.'" *See Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 1998) (citing 18 U.S.C. § 3626(a)(1)). While the PLRA affects the *type* of prospective relief the Court may award, "it has not substantially changed the threshold findings and standards required to justify an injunction." *Gomez*, 255 F.3d at 1129.

## ANALYSIS

**I. Authority to Seek Class-Wide Injunctive Relief**

As an initial matter, Plaintiff's Motion seeks broad, generalized relief to enjoin CDCR "from destroying and/or removing all law books from its prison libraries." Mot. at 4. Plaintiff claims "other prisoners from Calipatria, Centinela Facility 'C,' North Kern

///

7

State Prison and Solano . . . have stated that the prison libraries are removing all law books." *Id.* at 2.

The Court's screening order on Plaintiff's original Complaint cautioned Plaintiff that he has no authority to seek class-wide relief. *See* ECF No. 6 at 7–8. To be sure, "[a] litigant appearing in propria persona has no authority to represent anyone other than himself." *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962); *see also Oxendine v. Williams*, 509 F.2d 1405–07 (4th Cir. 1975) ("It is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.")*McShane v. United States*, 366 F.2d 286 (9th Cir. 1966) (privilege to appear without counsel is personal to the litigant). Consequently, Plaintiff's request for broad, generalized injunctive relief across all prison law libraries must be denied. *See Spence v. Beard*, No. 2:16-cv-1828-KJN-P, 2017 WL 896293, at *3 (E.D. Cal. Mar. 6, 2017) (dismissing pro se prisoner's attempt to bring class action challenging content of CDCR's law library).

## II.  Mootness

Before considering the merits to a request injunctive relief, the Court must find a nexus between the injury claimed in the underlying motion and the conduct alleged in underlying complaint. *Pac. Radiation Oncology*, 810 F.3d at 636. In considering this issue, the mootness of Plaintiff's request for relief becomes apparent, as CDCR transferred Plaintiff from Centinela to Solano during the pendency of this litigation.[4]

At the time Plaintiff filed his First Amended Complaint, Plaintiff was housed at Centinela. FAC at 1. Claim Five—the only surviving cause of action pertaining to the adequacy of the prison's law library—is predicated upon the collective conduct of Centinela staff members and alleged violations of Plaintiff's constitutional rights that occurred while Plaintiff was housed at Centinela. *Id.* at 32–39. This includes an allegation

---

[4] Plaintiff filed an *ex parte* letter advising the Court of his February 13, 2019 transfer to Solano. *See* ECF No. 88. On February 28, 2019, Plaintiff filed a Notice of Change of Address containing his Solano address. *See* ECF No. 90.

8

that Centinela's Senior Librarian deprived Plaintiff of the right to conduct meaningful and timely research, *id.* at 33 ¶ 4, as well as generalized allegations of harm relating to the conduct of former CDCR Secretary, Defendant Beard, who allegedly approved the amendment of regulations pertaining to CDCR's law library resources. *Id.* at 7, 32–33. As to the First Amended Complaint's requested relief, Plaintiff seeks an injunction requiring Defendant Beard to renew orders of law library resources, restore Westlaw access, and "[e]nsure that there are enough books[,] . . . computers[,] or a combination of both in ALL law libraries within CDCR." *Id.* at 46. The instant Motion seeks the same relief. *See* Mot. at 4. While the requisite nexus between the relief requested in the First Amended Complaint and the underlying Motion is established, the Court must consider the mootness of Plaintiff's request for relief given Plaintiff's transfer to Solano during the pendency of the litigation.

As set forth in *Dilley v. Gunn*, 64 F.3d 1365 (9th Cir. 1995), "[a]n inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." *Id.* at 1368. In *Dilley*, the district court granted injunctive relief requiring Calipatria to improve a prisoner's access to its law library. *Id.* at 1367. On appeal, the Ninth Circuit found the prisoner's case moot because the prisoner had been transferred from Calipatria to another California state prison. *Id.* at 1368. Although the prisoner argued the issue as "capable of repetition, yet evading review," the Ninth Circuit disagreed. *Id.* The Court cited numerous cases involving access to law library claims to determine these claims generally do not evade review. *Id.* at 1369. The Court also found the prisoner's claim that he may be transferred back to Calipatria sometime in the future as too speculative to avoid application of the mootness doctrine. *Id.*

Here, the entirety of Claim Five is predicated upon alleged violations of Plaintiff's constitutional rights that occurred while Plaintiff was housed at Centinela. FAC at 32–39. Yet Plaintiff is presently housed at Solano, and he was housed there at the time of filing the instant Motion. Mot. at 1; *see also* ECF Nos. 88, 90. Given that the instant litigation

9

has not been certified as a class action, Plaintiff's claim for injunctive relief as it pertains to Centinela is now moot. *Dilley*, 64 F.3d at 1368.

### III. Likelihood of Success on the Merits

Even if Plaintiff's Motion could withstand the overbreadth and mootness issues outlined above, *see supra* Sections I, II, Plaintiff has failed to carry his burden in demonstrating a likelihood of success on the merits. The threshold *Winter* factor for demonstrating entitlement to injunctive relief—likelihood of success on the merits—is the most important factor. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citation omitted). To the extent a plaintiff fails to show a likelihood of success on the merits, the Court need not consider the remaining three factors. *Id.* (citation omitted).

Here, Plaintiff's Motion vaguely contends CDCR must be stopped from destroying law books that were once protected by an injunction in *Gilmore*. Mot. at 4; *see also Gilmore*, 319 F. Supp. 105. But, this claim by itself lacks merit. *Gilmore* involved a challenge to regulations "restricting access to law books, legal materials, and lay assistance in preparing filings." *Gilmore v. People*, 220 F.3d 987, 992 (9th Cir. 2000). In 1972, the district court approved proposed regulations requiring CDC to offer a comprehensive list of materials. *Id.* at 994. The district court retained jurisdiction over the 1972 injunction until it granted defendant's motion to terminate the injunction and the court's jurisdiction on April 20, 2010. *Corral v. Yates*, No. 1:10-cv-01341-SKO-HC, 2011 WL 3925131, at *4 (E.D. Cal. Sept. 7, 2011) (citing *Gilmore v. Lynch*, No. 3:66-cv-45878-SI (N.D. Cal. Apr. 20, 2010), ECF No. 321). Thus, *Gilmore* is no longer pending. *Id.*

Insofar as Plaintiff's Motion alleges deficiencies in CDCR's law library resources alone violate his right of access to the courts, he is mistaken. The fundamental right of access to the courts requires prisons to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law," *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *abrogated in part on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996); however, this fundamental right does not grant inmates the right to a law library or legal assistance, which

10

are merely a means of ensuring access to the courts. *Lewis*, 518 U.S. at 351. While this right of access to the courts requires inmates be given the opportunity to attack their sentences and conditions of confinement, it does not guarantee inmates the ability to "transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. Indeed, the right does not guarantee a prisoner the ability to effectively litigate once in court. *Id.* at 354.

A prisoner claiming denial of his right of access to the courts must establish he suffered an actual injury, which is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a claim." *Lewis*, 518 U.S. at 348 (citation and internal quotations marks omitted). Actual injury is a standing requirement that cannot be waived; speculative injury does not vest standing. *Id.* at 349; 351–52. Actual injury cannot be established merely by claiming the prison's law library "is subpar in some theoretical sense[;]" rather, the inmate must demonstrate the alleged shortcomings in the library "hindered his efforts to pursue a legal claim." *Id.* at 351; *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that "[f]ailure to show a non-frivolous legal claim has been frustrated is fatal" to a claim for denial of access to legal materials) (citing *Lewis*, 518 U.S. at 353 n.4). For example, a prisoner may demonstrate actual injury if he is "so stymied by inadequacies of the law library that he [is] unable even to file a complaint." *Lewis*, 518 U.S. at 351.

Here, Plaintiff's own Motion reveals that he has access to legal research resources. *See* Mot. at 1–4; Mot. Ex. 3 at 19–22. Further, the docket reveals Plaintiff has been able to file several pleadings and motions without impediment. *See* ECF Nos. 8, 18, 20, 38, 39, 55, 58, 63, 64, 71, 74. While Plaintiff may prefer certain legal resources, Plaintiff's Motion has not alleged that this caused an inability to attack his sentence or conditions of confinement. *See Lewis*, 518 U.S. at 356. Absent any showing of actual injury within Plaintiff's moving papers, Plaintiff has failed to demonstrate a likelihood of success on the merits on his access-to-court cause of action. *Lewis*, 518 U.S. at 348–52. As such, it is unnecessary to consider the three remaining *Winter* factors for preliminary injunctive

11

relief, *Garcia*, 786 F.3d at 740, and Plaintiff's request for preliminary injunctive relief is denied.

## **CONCLUSION**

Based on the foregoing, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Preliminary Injunctive Relief and **GRANTS** Plaintiff forty-five (45) days from the date on which this Order is electronically docketed to file a Second Amended Complaint to cure the deficiencies regarding Plaintiff's claims against Defendant Kernan as noted in the Court's July 11, 2018 Order. ECF Nos. 61, 69. Plaintiff is cautioned that, should he choose to file a Second Amended Complaint, it must be complete by itself and comply with Federal Rule of Civil Procedure 8(a) and that any claim not re-alleged will be considered waived—regardless whether that claim is against any or all Defendants. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) (noting that claims dismissed with leave to amend which are not realleged in an amended pleading may be "considered waived if not repled"). If Plaintiff chooses not to file a Second Amended Complaint within forty-five (45) days, the case will proceed on Plaintiff's remaining claims, *i.e.*, Claims 2 through 5 against all Defendants except Defendant Kernan.

**IT IS SO ORDERED**.

Dated: March 16, 2020

Hon. Janis L. Sammartino
United States District Judge

12

16-CV-3079 JLS (RBM)