1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

STEVIE J. STEVENSON,
CDCR #K-16324,

                                Plaintiff,

vs.

JEFFREY BEARD, et al.,

                                Defendants.

Case No.:  16-CV-3079 TWR (RBM)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

(ECF No. 167)

   Plaintiff Stevie J. Stevenson, currently incarcerated at California State Prison – Solano located in Vacaville, California, and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, on December 19, 2016.  (*See* ECF No. 1 ("Compl.").)

**BACKGROUND**

**I.    Relevant Procedural Background**

   As stated above, Plaintiff initiated this action on December 19, 2016, when he filed his original Complaint.  (*See generally* Compl.)  In his original Complaint, Plaintiff named Defendants Jeffrey Beard, Scott Kernan, Shannon Swain, Raymond Madden, Dennis

/ / /

/ / /

Brown, N. Telles, C. Bell, Patricia Couch,[1] C. Walker, John & Jane Does, J. Rohrer, and Unknown Mailroom Staff.  (*See generally id.*)  On May 16, 2017, the Court *sua sponte* screened Plaintiff's Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  (*See generally* ECF. No. 6.)  The Court dismissed Plaintiff's Complaint in "its entirety for failure to state a claim."  (*See id.* at 14.[2])  Plaintiff, however, was granted leave to file an amended pleading.  (*See id.*)  Plaintiff was cautioned that his amended complaint "must be complete by itself without reference to his original pleading" and any Defendants "not named and any claim not re-alleged in his Amended Complaint will be considered waived."  (*See id.* at 17 (citing S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989)).)

On June 8, 2017, Plaintiff filed his First Amended Complaint.  (*See generally* ECF No. 8 ("FAC").)  In his First Amended Complaint, Plaintiff named Defendants Beard, Unknown mailroom staff, Mailroom staff "C," Couch, Walker, Bell, Telles, Madden, and Kernan.  (*See id.* at 2–4.)  Plaintiff no longer named Swain, Brown, John & Jane Does, or Rohrer as Defendants in his First Amended Complaint, however, and, consequently, the claims against these Defendants are deemed waived.  *See Hal Roach Studios*, 896 F.2d at 1546.  The Clerk of Court will therefore be directed to terminate these Defendants from the Court's docket.

Defendants Kernan, Telles, Madden, Beard, Bell, and Walker filed a motion seeking to dismiss a portion of Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See generally* ECF No. 32.)  The Court adopted the Report and

---

[1] Patricia Couch was initially identified in Plaintiff's pleadings as "Mailroom Staff PC."  Plaintiff later requested that "Mailroom Staff PC" be substituted with Patricia Couch.  (*See generally* ECF No. 112.)  The Honorable Ruth Bermudez Montenegro granted this request on July 7, 2020.  (*See generally* ECF No. 113.)

[2] Throughout this Order and for ease of consistency and reference, the Court will cite to each document in the record using both the number assigned to the document and the page number automatically generated by its Case Management/Electronic Case File system ("ECF").

Recommendation issued by Magistrate Judge Montenegro, (*see generally* ECF No. 47), and dismissed Plaintiff's Claim I with prejudice and dismissed all claims against Defendant Kernan.  (*See generally* ECF No. 61.)

On June 4, 2021, Defendants filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.  (*See generally* ECF No. 167 ("Mot.").)  The Court provided Plaintiff with notice of the requirements for opposing summary judgment as required by *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988), and *Rand v. Rowland,* 154 F.3d 952 (9th Cir. 1998) (en banc).  (*See generally* ECF No. 176.)  After he was granted several extensions of time, (*see generally* ECF Nos. 191, 208, 212), Plaintiff filed his Opposition on October 6, 2021.   (*See generally* ECF No. 213 ("Opp'n").)   On November 12, 2021, Defendants filed their Reply.  (*See generally* ECF No. 216 ("Reply").) Plaintiff filed a Surreply on December 9, 2021.  (*See generally* ECF No. 219 ("Surreply").)

## II.   Allegations in Plaintiff's Verified First Amended Complaint

### A.   Incoming Legal Mail

Plaintiff alleges that on May 27, 2016, while he was housed as Centinela State Prison ("CEN"), a correctional officer issued Plaintiff a "legal envelope from the California Innocence Project that was clearly stamped 'confidential legal mail.'"  (*See* FAC at 19.) After inspecting the envelope, Plaintiff determined that there were "missing items" from the envelope including "affidavits, declarations, and documents," which he claims is the result of this mail being opened and "read outside his presence."  (*See id.*)  Plaintiff claims that unnamed mailroom staff "stole his work product that dealt with his current criminal case."  (*See id.*)  Plaintiff had his family pay for an attorney to obtain these "missing documents" so he could "file his petition for writ of habeas corpus."  (*See id.*)

On June 27, 2016, Plaintiff was given another "envelope clearly marked legal confidential."  (*See id.*)  This mailing was "return[ed] mail from the Los Angeles County District Attorney's Office."  (*See id.*)  Again, Plaintiff "determined that the mail was opened and read by the mailroom staff outside his presence."  (*See id.*)

/ / /

Plaintiff filed a grievance regarding the two incidents of alleged tampering with his purported legal mail. (*See id.*) Plaintiff's grievance was denied on December 8, 2016, at the Third Level of Review. (*See id.* at 20.)

On January 31, 2017, Plaintiff was given another envelope which he determined was "legal confidential mail from the court that was opened out of [Plaintiff's] presence and read." (*See id.*) Plaintiff further determined that the envelope, "despite having his legal brief inside of it, was not an official envelope from the San Diego Superior Court." (*See id.*) Plaintiff believed that the legal mail from the San Diego Superior Court was "taken out of its original official court envelope and placed in a regular envelope after being read and possibly copied by staff." (*See id.*)

Plaintiff filed another grievance on February 1, 2017, "about his mail being opened and taken out of its original envelope." (*See id.*) This grievance was denied, and when Plaintiff attempted to file an appeal, "the mailroom denied him the opportunity to sign an inmate trust account withdrawal form and send the mail for proper exhaustion." (*See d.* at 20–21.)

### B.   *Outgoing Legal Mail*

This was not Plaintiff's first issue with sending legal mail because of denied inmate trust account withdrawals. For example, on October 17, 2016, Plaintiff "signed a CDC-193 Form "Inmate Trust Account Withdrawal" to mail his grievance appeal to the "Chief of Inmate Appeals Branch for Director's Level Review." (*See* FAC at 23.) By filing this request, Plaintiff could obtain postage to mail his appeal of a grievance to the Chief of Inmate Appeals. (*See id.*) The following day, however, Plaintiff's request was returned to him, and he was informed that, due to his indigency, he would have to provide postage. (*See id.*) According to Plaintiff, this notice was "from mailroom staff member with the initials PC." (*See id.*) Plaintiff filed a grievance in response to this action taken by "PC" and informed the "first level reviewer" that he was "not indigent" due to him "having a job that paid him once a month." (*See id.*)

/ / /

16-CV-3079 TWR (RBM)

Similarly, on November 27, 2016, Plaintiff signed another form to withdraw from his inmate trust account so he could mail his "legal briefs" to attorneys that could "help with his case due to his inability to conduct research and send a legal complaint" to the state bar. (*See id.*) Plaintiff filed another form the following day to mail a "legal brief to attorney Jennifer Hansen on the California Appellate Project." (*See id.* at 24.) These forms were returned to Plaintiff the following day with the notation that, due to his indigency, Plaintiff had to "attach postage or obtain indigent envelopes." (*See id.*) This time, the notice was "signed by mailroom staff member with the initial 'C'." (*See id.*) Plaintiff filed a grievance regarding this action "again stating the fact that he was not indigent due to have a job assignment that paid him monthly funds." (*See id.*)

On December 22, 2016, Plaintiff "signed an inmate trust account withdrawal form to mail out a timely writ of mandate to Judge Craig Richman of the Los Angeles Superior Court." (*See id.*) Again, this form was returned to Plaintiff with the notation that he "could not send any mail out without postage or indigent envelopes due to his being indigent." (*See id.*) This form was signed by "mailroom staff member C. Walker." (*See id.*) Plaintiff filed another grievance regarding this action. (*See id.*)

On February 1, 2017, Plaintiff signed another inmate trust account withdrawal form to send his grievance appeals to the Chief of Inmate Appeals "in order to exhaust" his grievances. (*See id.*) The following day, this form was returned to him with the notation that he would not be able to send his mail "due to his indigency and failure to place postage or indigent envelopes for mailing." (*See id.*) This time, there was "no signature or initials of the mailroom staff who refused to mail" Plaintiff's grievances. (*See id.*)

On March 29, 2017, Plaintiff signed another "inmate trust account form" to "send legal mail to attorney Karen Hunter" regarding "postconviction discovery proceeding." (*See id.*) Again, this form was returned to Plaintiff by "mailroom staff member with the initials 'C'" indicating that he "needed to place postage on the envelope" or provide "indigent envelopes." (*See id.*)

/ / /

On April 11, 2017, Plaintiff received mail from the California Innocence Project "asking that he send additional legal material because they were in the process of assigning his case to a student to review." (*See id.*)  After obtaining this material, Plaintiff submitted another inmate trust account form to mail this material as requested. (*See id.*)  This form, signed by a mailroom staff member with the initials "C," was returned to Plaintiff for failing to provide postage or indigent envelopes. (*See id.*)

Plaintiff filed a "Pitchess and Brady motion" on April 20, 2017, and sent a copy to Judge Richman, the Los Angeles City Attorney, Chief of the Los Angeles Police Department, the San Diego City Attorney, and the Chief of the San Diego Police Department. (*See id.*)  Plaintiff also sent a letter to attorney Chris Campbell "to seek assistance with his case." (*See id.*)  These mailings were returned to Plaintiff by "mailroom staff member 'C'" for failing to provide postage or indigent envelopes. (*See id.*)

Plaintiff claims that he submitted information to the "mailroom staff's supervisor Ms. Carol Bell" during "many interviews" that showed he "cannot be considered an indigent inmate" because he "received a monthly payment for being a VEP tutor." (*See id.* at 26.)  Despite "submitting this proof," however, Plaintiff claims he has been "deprived of the right to send his legal confidential mail out of the prison." (*See id.*)  As a result, Plaintiff's *Pitchess* and *Brady* motions purportedly were denied, along with his petition for writ of habeas corpus. (*See id.*)  He also was allegedly denied the ability to seek legal counsel to assist him with legal research in all of his ongoing legal matters. (*See id.*)

### C.   Access to Counsel, Legal Materials, and Legal Research

In November of 2015, Attorney James Bisnow was "appointed 'only' to assist [Plaintiff] with obtaining his discovery material" to support his petition for writ of habeas corpus. (*See* FAC at 29.)  Attorney Brisnow was not appointed to assist Plaintiff with the filing of his petition. (*See id.*)  On July 14, 2016, Attorney Bisnow was "given audiotapes that were never turned over to [Plaintiff's] trial attorney" and told Plaintiff that these "tapes were exculpatory." (*See id.*)  On August 8, 2016, Attorney Brisnow wrote Plaintiff informing Plaintiff that CEN's Litigation Coordinator N. Telles stated that Plaintiff was

not permitted to have possession of these audio recordings.  (*See id.*)  Plaintiff believes that there are other inmates at CEN who have "received their audio recordings and have had law library staff retrieve a computer" allowing inmates to listen to their audio recordings in the law library.  (*See id.* at 30.)  As a result of not being allowed to receive these audio recordings, Plaintiff was "denied the right to bolster his claim" in his petition for writ of habeas corpus that the prosecution witness in his criminal trial gave coerced testimony.  (*See id.*)

Plaintiff alleges that all actions set forth in his First Amended Complaint show a pattern of behavior that "cumulatively deprived him of presenting a 'non-frivolous' claim." (*See id.* at 33–34.)  Plaintiff claims that he has been "unable to conduct any legal research" and denied the "opportunity to send his legal work out to receive the assistance necessary." (*See id.* at 37.)  He is also "being deprived of the right to conduct legal research or receive help from other attorneys due to the inactions and actions by CDCR staff."  (*Id.*)

## LEGAL STANDARD

A court may grant summary judgment when it is demonstrated that there exists no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The party seeking summary judgment bears the initial burden of informing a court of the basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine dispute of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is "material" if it might affect the outcome of the suit under the governing law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *See Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  Where

the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Id.* But if the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine dispute as to any material fact actually exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *See Estate of Tucker*, 515 F.3d 1019, 1030 (9th Cir. 2008) (internal quotation marks and citation omitted).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before a court must be drawn in favor of the opposing party. *See Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003). However, "[b]ald assertions that genuine issues of material fact exist are insufficient." *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007); *see also Day v. Sears Holdings Corp.*, No. 11–09068, 2013 WL 1010547, *4 (C.D. Cal. Mar. 13, 2013) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). A "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" *Anderson*, 477 U.S. at 249–50 (citation omitted); *see also Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine dispute of material fact, the moving party is entitled to summary judgment. *See Nissan Fire & Marine*, 210 F.3d at 1103.

/ / /

**ANALYSIS**

Defendants seek summary judgment as to Plaintiff's First Amendment access-to-courts claims, First Amendment retaliation claim, Fifth Amendment claim, Sixth Amendment right-to-counsel claim, Fourteenth Amendment due process claim, and Fourteenth Amendment equal protection claim.[3]   (*See* Mot. at 16–28.)   In addition, Defendants Madden and Telles argue that they are entitled to qualified immunity with respect to Plaintiff's claims regarding denial of possession of audio recordings.   (*See id.* at 19.)   Plaintiff opposes on all grounds, claiming that Defendants "have failed to meet their burden of demonstrating that there is no dispute as to any material facts" and the facts set forth in his verified First Amended Complaint show that the Defendants "violated Plaintiff's clearly established constitutional rights."   (*See* Opp'n at 1–2.)

**I.   First Amendment Claim – Legal Mail**

In Count 2 of Plaintiff's First Amended Complaint, he alleges that on a number of occasions his legal mail was opened outside of his presence, tampered with, and items within this mail stolen by mailroom staff.   (*See* FAC at 19–21.)   Prisoners "have a protected First Amendment interest in having properly marked legal mail opened only in their presence."   *See Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017); *see also O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (prison officials' policy of "inspect[ing] the contents of all incoming and outgoing legal mail" outside the presence of the prisoner may have an impermissible "chilling" effect on the constitutional right to petition the government).   A plaintiff need not show "any actual injury beyond the free

/ / /

---

[3] Defendants also seek summary judgment with respect to Plaintiff's Claim 1 that former CDCR Secretary Beard's decision to switch the use of Westlaw to Lexis to perform legal research, placing time limits on time spent in the prison's law library, and limiting access to computers within the prison's law library violates his access to the courts because evidence in the record demonstrates that Plaintiff did not suffer an "actual injury" as a result of these policies.   (*See* Mot. at 11–13.)   The Court, however, previously dismissed Claim 1 with prejudice on grounds of claim preclusion.   (*See* ECF No. 61 at 8.)   Consequently, the Court need not address this argument.

speech violation itself to state a constitutional claim." *Hayes*, 849 F.3d at 1212 (quoting *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008)).

Plaintiff alleges two different instances that his legal mail was opened outside of his presence.[4]   The first instance is mail that he received from the "California Innocence Project" on May 27, 2016.  (*See* FAC at 19.)  The second instance was on June 27, 2016, when Plaintiff was purportedly given an "enveloped clearly marked legal confidential" from the Los Angeles County District Attorney's Office that had been opened and read "by the mailroom staff outside his presence."  (*See id.*)

Defendants do not dispute that Plaintiff's mail was opened outside of his presence or that this mail was deemed "legal mail"; rather, Defendants argue that "[b]ecause there is no evidence that any of the mailroom staff intentionally caused Plaintiff's incoming confidential mail to be mishandled, [this claim] should be dismissed."  (*See* Mot. at 30.) In support of their argument, Defendants proffer the Declaration of C. Bell, CEN Procurement and Services Officer II, whose duties include "overseeing mailroom operations."  (*See* ECF No. 167-3 ("Bell Decl.") ¶ 1.)  Bell declares that when "incoming mail is delivered, it is dumped on a large table, and all staff sort the mail by hand." (*See id.* ¶ 4.)  Legal mail is separated from regular mail, and the legal mail is "reviewed by the office technician." (*See id.*)  If it is determined that the initial assessment that a piece of mail is "legal mail" is incorrect, that mail is processed as "regular mail."  (*See id.*)  If the piece of mail meets the criteria as "legal mail," the "senders address is logged into the legal mail database which keeps track of an inmates incoming and outgoing legal mail."  (*See id.*)  A correctional officer will open the legal mail and "scan it for contraband" in the presence of the inmate receiving the legal mail.  (*See id.*)

/ / /

---

[4] Although Plaintiff also claims that mail that he received from the San Diego Superior Court had been opened, "[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *See Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996).

While the Bell Declaration describes the process that is supposed to happen when processing inmate's legal mail, however, it does not provide any evidence to support Defendants' assertion that Plaintiff's legal mail was not intentionally opened. Instead, in their moving papers, Defendants seem to rely on Plaintiff's deposition testimony, claiming Plaintiff testified that he "has no reason to believe [his legal mail] was intentionally opened outside of his presence by Defendants." (*See* Mot. at 17 (citing ECF No. 167-5 ("Defs.' Ex. 1") at 10, 13, 17).) Defendants believe this supports their conclusion that "[i]solated instances of interference with mail without any evidence of improper motive have been found insufficient to state a constitutional claim." (*See id.* at 31 (citing *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989)).)

Defendants further assert that the Ninth Circuit's decision in *Hayes* that prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence, *see* 849 F.3d at 1211, does not apply "when there is no evidence of improper motive." (*See* Mot. at 31–32.) But this is incorrect. The Ninth Circuit in *Hayes* rejected that "improper motive" is an element that must be proven by Plaintiff when they found that the plaintiff had made a plausible First Amendment claim by alleging that his "protected mail was arbitrarily or capriciously opened outside his presence" and "[n]othing further is required." *See* 849 F.3d at 1211. *Hayes* further finds that the injury suffered when an inmate's legal mail opened outside his presence is "that his right to privately confer with counsel has been chilled." *Id.* (citing *Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014).)

Defendants acknowledge that, "had Defendants intentionally opened even a single piece of confidential legal mail, it would be a First Amendment violation." (*See* Mot. at 32.) Defendants then argue, without citing to any supporting evidence in the record, that "mail was dumped on a table, and a human error by an unknown person caused Plaintiff's mail to be placed in the regular mail pile," which was then purportedly "opened by a machine, briefly scanned by an office assistant for contraband, placed in a truck, and delivered to Plaintiff during regular mail call." (*See id.* at 32–33.) There is no testimony

by any of the named Defendants or prison officials supporting this claim as to how Plaintiff's legal mail was opened outside of his presence.

If prison officials open legal mail outside the presence of an inmate, it is their burden to establish that there were legitimate penological interests that justify the policy or practice. *See Hayes*, 849 F.23d at 1213. Defendants do not point to any testimony or evidence in the record to show that there was a legitimate penological interest in opening Plaintiff's legal mail outside his presence. Consequently, the Court **DENIES** Defendants' Motion as to Plaintiff's First Amendment claims regarding the opening of his legal mail outside his presence.

## II.   First Amendment Claims – Access to Courts

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). To state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *See id.* at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *See id.* at 348 (citation and internal quotations omitted). The right of access does not require the State to "enable the prisoner to discover grievances," or even to "litigate effectively once in court." *See id.* at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewis* holds:

> [T]he injury requirement is not satisfied by just any type of frustrated legal claim . . . . *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

/ / /

/ / /

*Id.* at 346; *see also Spence v. Beard*, No. 2:16-CV-1828 KJN P, 2017 WL 896293, at *2–3 (E.D. Cal. Mar. 6, 2017).  Indeed, the failure to allege an actual injury is "fatal."  *See Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal.") (quoting *Lewis*, 518 U.S. at 353 & n.4).

Here, Plaintiff alleges that he was denied the right to send outgoing legal mail, thwarted from exhausting his administrative grievances, and denied the ability to obtain legal counsel and access to "exculpatory" evidence, which resulted in an inability to file relevant petitions for writ of habeas corpus, along with *Pitchess* and *Brady* motions.

### A.    *Outgoing Legal Mail*

In Count 3 of Plaintiff's First Amended Complaint, he alleges that on six occasions between October of 2016 and April of 2017,[5] he was denied the right to send outgoing legal mail.  (*See* FAC at 23–25.)  For each of these mailings, Plaintiff submitted a "Trust Account Withdrawal Order" to have money withdrawn from his trust account to pay for postage to have these mailings sent out.  (*See id.*)  On each of the occasions set forth in Plaintiff's First Amended Complaint, these requests were returned to Plaintiff by either Defendant Crouch or Walker, informing Plaintiff that, because he was deemed indigent, he had to seek envelopes with postage as set forth in Section 3138 of Title 15 of the California Code of Regulations ("Section 3138").  (*See id.*)  Section 3138 states, in relevant part, that, "[u]pon request of an indigent inmate, as defined in Section 3000, writing paper, envelopes, a writing implement, and the postage required for five 1-ounce First-Class letters per week shall be supplied."  15 Cal. Code Regs. § 3138(a).

Plaintiff argues in his First Amended Complaint that he was not indigent because he had a job while housed at CEN, (*see* FAC at 23), and, in his Opposition, argues that he

---

[5] In Plaintiff's Opposition to Defendants' Motion he refers to several other occasions that he was also denied the right to send out legal mail.  *See* ECF No. 213 at 30-32.  However, all of these allegations are alleged to have occurred *after* the filing of his FAC and are not included in his FAC.  Thus, these arguments in support of his Opposition relating to the events that occurred after June 8, 2017, the date of the filing of his FAC, were not considered by the Court in this Order.

even if he had no money in his trust account at the time he wanted to mail legal documents, his trust account could have been "charged" and the amount paid back when he deposited money from his paycheck. (*See* Opp'n at 24.) Specifically, Plaintiff argues that when he would submit the trust account withdrawal form, "if money was on Plaintiff's account the balance would be immediately taken off[;] however, if there wasn't enough money to pay for legal postage an obligation/encumbrance would be placed on his account." (*See id.*) Further, once "money was placed on Plaintiff's account[,] the amount owed for legal postage would immediately be taken off" in a process known as the "Trust Restitution Accounting Canteen System" or "TRACS." (*See id.*)

Defendant Bell, however, attests that "inmates are expected to pay for postage" with regard to outgoing mail. (*See* Bell Decl. ¶ 6.) The two ways in which inmates can do so are providing postages themselves or "completing a Trust Account Request form." (*See id.*) If inmates submit the Trust Account Request form, "mailroom staff call the Trust Accounting Office" to "verify that sufficient funds are available in the inmate's account." (*See id.*) If an inmate has no funds in their account, "mail is returned to the inmate using Form 019." (*See id.*) If an inmate is determined to be indigent, they are given five "pre-stamped" envelopes by the Trust Accounting Office in compliance with Section 3138. (*See id.*) It is the Trust Accounting Office, however, and not the mailroom staff, who "determine if an inmate is indigent." (*See id.*) Inmates are provided "free unlimited mail to courts, and the Attorney General's Office[,]" but there is not free unlimited mail provided to inmates for mail to attorneys or the Chief of Inmates Appeals." (*See id.*) Finally, Bell attests that "inmates are not permitted to send mail on credit." (*See id.*)

With regard to the correspondence to the Chief of Inmate Appeals, Plaintiff argues his "actual injury" is that he "has been deprived and hindered from exhausting his state administrative remedies to add to this 42 U.S.C. § 1983 lawsuit." (*See* FAC at 27.) There is a requirement that an inmate must exhaust all administrative remedies that are available prior to bringing a § 1983 claim, and, generally, an inmate must pursue his grievances / / /

through all levels of the CDCR's administrative grievance process. *See Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir. 2005).

In addition to alleging an "actual injury," a plaintiff must also plead facts sufficient to describe the "non-frivolous" or "arguable" nature of underlying claim he contends was lost as result of the defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). This requires that the nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Here, Plaintiff refers to three separate grievances and appeals that he was unable to mail to the Chief of Inmate Appeals that therefore caused the "actual injury" forming one of the bases of his access-to-courts claim: CDCR Inmate/Parolee Appeal Form 602 Log Nos. CEN-A-16-00742, CEN-A-16-01573, and CEN-A-16-01732. (*See* FAC at 23–24.)

Plaintiff appended grievance Log No. CEN-A-16-00742 as an Exhibit to his First Amended Complaint. (*See id.* at 128–31.) In this grievance, Plaintiff claims that his legal mail was tampered with on May 27, 2016, (*see id.*), which is the subject of "Count 2" in Plaintiff's First Amended Complaint. (*See id.* at 19–22.) Not only did Plaintiff exhaust this grievance to the Third Level Appeal, (*see id.* at 136), but Defendants did not move for or obtain dismissal on the ground that Plaintiff failed to exhaust this claim. Consequently, Plaintiff suffered no "actual injury" as to grievance Log No. CEN-A-16-00742.

As to the other two grievances, Plaintiff fails to attach them to his First Amended Complaint or to describe the "non-frivolous" or "arguable" nature of underlying the claims in these grievances that he was purportedly prevented from sending to the Third Level of Appeal. *See Christopher*, 536 U.S. at 413–14. In any event, Defendants did not move to dismiss any claims in this action on the grounds that Plaintiff failed to exhaust his administrative remedies, and Plaintiff does not set forth any evidence he attempted to bring claims that were rejected for failing to exhaust in any separate action. Consequently, Plaintiff has pointed to no evidence in the record to overcome Defendants' showing that there is no genuine dispute of material fact that Plaintiff suffered an "actual injury" as to the purported inability to mail his appeal of these grievances to the Third Level of Appeal.

### B.      Petition for Writ of Habeas Corpus

In his First Amended Complaint, Plaintiff alleges that the denial of his ability to send mail to the "Innocence Project, the California Appellate Program and many attorneys seeking assistance with his petition for writ of habeas corpus" resulted in "actual injuries." (*See* FAC at 26.)   Plaintiff claims he was thwarted from sending email to these entities beginning on May 27, 2016.  (*See id.* at 19.)  In his Opposition, Plaintiff further contends that he was "prevented by filing a petition for writ of habeas corpus in June of 2016[,]" as a result of the Defendants' actions with regard to his legal mail.  (*See* Opp'n at 62.) Defendants, however, have submitted a petition for writ of habeas corpus filed by Plaintiff in the Central District of California on June 6, 2016.[6]  (*See* ECF No. 167-5 at 158–65 ("Defs.' Ex. 2").)  The Court takes judicial notice of the fact that the District Court for the Central District of California dismissed Plaintiff's petition on July 20, 2016, on the ground that Plaintiff "cannot demonstrate that the decisions of the pertinent California courts declining to allow petitioner to represent himself in the California Penal Code section 1054.9 habeas related proceedings, were contrary to, or involved an unreasonable application of clearly established federal law or were based on an unreasonable determination of the facts in light the evidence presented."  *See* Order Summarily Dismissing Petition and Denying a Certificate of Appealability, *Stevenson v. People of the State of California*, No. 2:16-cv-03945-CJC-JC (C.D. Cal. filed July 20, 2016), ECF No. 8.  Consequently, there is no evidence in the record that Plaintiff's habeas petition was denied as a result of any of the named Defendants' actions or that Plaintiff suffered an "actual injury" in light of the fact that he did, in fact, file petitions for writ of habeas corpus. / / /

---

[6] Plaintiff signed this Petition on June 1, 2016, which is four days after he first claims he was thwarted from receiving or sending mail to various counsel for assistance in preparing this petition.  (*See* Opp'n at 62.)  A court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."  *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002)).

1

### C.     Pitchess *and* Brady *Motions*

2      Plaintiff claims that, as a "direct result of not being allowed to sign an inmate trust

3   account and mail confidential legal work," he was "denied the opportunity to mail the

4   Pitchess motions to the Chief of the [Los Angeles Police Department] and [San Diego

5   Police Department,]" which caused his "motion to be denied." (*See* FAC at 26.)  Further,

6   Plaintiff alleges that he was appointed counsel, Attorney James Bisnow, in late 2015, to

7   "assist" Plaintiff with "obtaining his discovery material." (*See id.* at 29.)  On July 14, 2016,

8   Attorney Bisnow "was given audiotapes that were never turned over to Stevenson's trial

9   attorney." (*See id.*)   Attorney Bisnow informed Plaintiff that these tapes were

10  "exculpatory. (*See id.*)  However, on August 8, 2016, Plaintiff received a letter from

11  Attorney Bisnow that Litigation Coordinator Telles had told Attorney Bisnow that Plaintiff

12  would not be permitted to have these recording in his possession. (*See id.*)  Plaintiff claims

13  that, "without this important exculpatory information[,] he was unable to use the audio

14  recordings" that the prosecution in his criminal case "withheld in violation of *Brady*." (*See*

15  *id.* at 30.)

16      Plaintiff, however, filed a civil rights complaint in the Central District of California,

17  *Stevenson v. Richman*, No. 2:17-cv-03667-CJC-JC (C.D. Cal. filed May 4, 2017)

18  ("*Richman*"), prior to the filing of his amended complaint in this action, in which Plaintiff

19  alleged that a Los Angeles Superior Court Judge, the Los Angeles District Attorney, and

20  Attorney Brisnow were responsible for the denial of access to the courts in violation of his

21  First Amendment rights based on the same issues raised in this case.  In *Richman*, Plaintiff

22  claimed he had been notified by Attorney Brisnow on June 13, 2016, that his "discovery

23  motion and *Pitchess* motion [had been] filed."  Complaint, *Richman*, ECF No. 1 ("*Richman*

24  Compl.") at 12.  Plaintiff acknowledged that Attorney Brisnow also had included a copy

25  of this *Pitchess* motion, "one for the [Los Angeles Police Department] and the other for the

26  [San Diego Police Department]."  *See id.*  Plaintiff attached a conformed copy of this

27  motion as an exhibit to his complaint in *Richman*, showing a *Pitchess* motion had been

28  filed in Los Angeles Superior Court by Attorney Brisnow on behalf Plaintiff on June 6,

2016.  *See* Notice of Motion for Post-Conviction Discovery Pursuant to Evidence Code Section 1043 and *Pitchess v. Superior Court* and *Hurd v. Superior Court*, *Richman*, ECF No. 1-2 at 131–38.  In this matter, Defendants also submit the docket "California Court of Appeals, Second District, Case No. B279269," which demonstrates that Plaintiff filed a "Writ of Habeas Corpus, a *Pitchess* motion, and a *Brady* motion" on December 2, 2016. (*See* ECF No. 167-5 at 171–75 ("Defs.' Ex. 4").)  Based on the judicially noticeable legal actions previously filed by Plaintiff and the evidence submitted by Defendants, the Court finds that Defendants have met their initial burden to show that Plaintiff has not suffered an "actual injury" in violation of his right to access to the courts due to any action on the part of Defendants.

The burden therefore shifts to Plaintiff to establish a genuine dispute of material fact. *See Matsushita*, 475 U.S. at 586.  Plaintiff's claims that he was unable to file a *Pitchess* or *Brady* motion due the purported actions of Defendants is not supported by any evidence in the record and, in fact, is directly contradicted by evidence that he did file these motions in June and December of 2016.  Further, Plaintiff presents no evidence to raise a triable issue of material fact that Defendants' actions played any role in the purported denial of these motions.

Finally, Plaintiff alleges that he was not permitted to possess audiotapes that had been previously turned over to his counsel that he claims were exculpatory and were intended to be used to "substantiate his claim that a prosecution witness's testimony was based on involuntary statements." (*See* FAC at 29.)  Plaintiff's arguments, as well as his factual allegations, are disjointed and difficult to follow; nonetheless, Plaintiff's claim that he was never able to listen to these audiotapes at CEN, however, are contradicted by the record.  For example, in the *Richman* Complaint—which was filed more than a month before the First Amended Complaint in this action—Plaintiff alleges that on Attorney Bisnow sent an investigator to visit Plaintiff at CEN on November 8, 2016, to "listen to the

/ / /

/ / /

audiotaped interviews of witnesses and/or suspects and telephone calls." *See id.* at 15.[7] Plaintiff also alleges in the *Richman* Complaint that he was informed by another attorney retained by his family that Judge Richman "ordered [this attorney] not to give Plaintiff a copy of the audio recordings or make a transcript of those recordings." *Id.* at 17; *see also id.* at 20 ("Judge Richman has ruled that Plaintiff may NOT for any reason have a copy of the audiotaped interviews.") (emphasis in original). Further, in the *Richman* Complaint, Plaintiff seeks to hold Judge Richman liable for "refus[ing] to allow Plaintiff to submit his Pitchess motion with supporting documents," which purportedly "violat[ed] Plaintiff's rights under the First Amendment to the US Constitution to Access the Court." *See id.* at 28. The Honorable Cormac J. Carney dismissed these claims without leave to amend on May 24, 2017, *see* Order, *Richman*, ECF No. 6 at 1, and the Ninth Circuit found Plaintiff's appeal of Judge Carney's dismissal to be frivolous. *See, e.g.*, Order, *Richman*, ECF No. 17.

The same is true of the new factual allegations and evidence contained in both Plaintiff's Opposition—which is over 500 pages, (*see generally* ECF No. 213)—and his Surreply. As the Court noted in its October 6, 2017 Order, some of Plaintiff's access-to-courts claims could not be dismissed at the screening stage because, while he submitted "voluminous exhibits includ[ing] copies of the habeas petitions he admits he previously filed in the California courts," he did not include "copies of any final decisions entered by any of those courts on the merits." (*See* ECF No. 13 at 5 n.2 (citing *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016)).) Consequently, in his Opposition, Plaintiff has submitted partial transcripts of proceedings before Judge Richman in the Los Angeles Superior Court. Some of these transcripts, however, negate Plaintiff's underlying claim that the denial of access to the audio tapes violated his right to access to the courts. For

---

[7] Plaintiff does not allege any facts related to this visit by the investigator or acknowledge that he was able to listen to tapes prior to filing his motions in the California Court of Appeal in December of 2016. (*See generally* FAC.)

16-CV-3079 TWR (RBM)

example, Plaintiff submits a partial transcript of a proceeding that occurred before Judge Richman on February 6, 2018. (*See* Opp'n at 251–53.) In this proceeding, Plaintiff was represented by Chris Campbell, (*see id.* at 251), who explained to Judge Richman that he had heard the audiotapes and, based on the tapes, was going to file a "renewed *Pitchess*" on Plaintiff's behalf. (*See id.* at 253.) Plaintiff also submits a transcript of another hearing before Judge Richman on August 14, 2018, at which Plaintiff was again represented by Attorney Campbell. (*See id.* at 270–73.) At this hearing, Attorney Campbell represented that he had had the audiotapes transcribed and had lodged them with the court. (*See id.* at 271.) Again, Attorney Campbell argued that these audio recordings "warrant[ed] a renewed *Pitchess* Motion." (*See id.* at 272.) While it is not clear whether Attorney Campbell was granted leave to file a renewed *Pitchess* Motion on Plaintiff's behalf, it is clear from Plaintiff's own exhibits that Plaintiff's alleged deprivation of these tapes did not cause him to suffer an "actual injury" rising to the level of a denial of access to the courts because he had counsel who had possession of these tapes and was representing his interests in court proceedings.

### D.    Conclusion

Because there is no evidence in the record demonstrating there is a genuine triable issue of material fact as to whether Defendants violated Plaintiff's First Amendment right to access to the courts, the Court **GRANTS** Defendants' Motion as to this claim.

## III.   First Amendment Retaliation Claims

A retaliation claim has five elements. *See Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, a plaintiff must demonstrate that the retaliated-against conduct is protected. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).[8] Second, the plaintiff

/ / /

/ / /

---

[8] Here, the filing of an inmate grievance is protected conduct. *See Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

16-CV-3079 TWR (RBM)

must show the defendants took adverse action against him.[9]  *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  Third, the plaintiff must prove a causal connection between the adverse action and the protected conduct.[10]  *See Watison*, 668 F.3d at 1114.  Fourth, the plaintiff must demonstrate the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities."  *See Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[11]  Fifth and finally, the plaintiff must prove "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution."  *See Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114–15.

Plaintiff alleges in his First Amended Complaint that Defendants Bell, Walker, and Couch "retaliated against [Plaintiff] for filing a complaint regarding his legal confidential mail being opened out of his presence" by taking his "legal confidential 'work product' (affidavits, declarations and documents)."  (*See* FAC at 28.)  Defendants argue that there is no evidence in the record to support any of the elements of a retaliation claim.  (*See* Mot. at 36–37.)

Specifically, Defendant Bell argues that, with regard to the allegations of the "mishandling" of Plaintiff's confidential legal mail, "there are no acts or omissions attributed to Bell."  (*See* Mot. at 36.)  The Court agrees.  The only allegations as to Defendant Bell are the claims that Plaintiff submitted information to the "mailroom staff's supervisor Ms. Carol Bell" during "many interviews" that showed he "cannot be considered an indigent inmate" because he "received a monthly payment for being a VEP

---

[9] The adverse action need not be an independent constitutional violation, *see Pratt*, 65 F.3d at 806; rather, "the mere threat of harm can be an adverse action."  *See Brodheim*, 584 F.3d at 1270.

[10] Because direct evidence of retaliatory intent is rare, a chronology of events from which retaliation can be inferred may suffice.  *See Watison,* 668 F.3d at 1114 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent." (citing *Pratt*, 65 F.3d at 808)).

[11] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *see Brodheim*, 584 F.3d at 1269, that is "more than minimal."  *See Robinson*, 408 F.3d at 568 n.11.

tutor." (*See* Opp'n at 26.)  There are no allegations or evidence in the record, however, that Bell took any retaliatory action against Plaintiff.

As for Defendants Walker and Couch, Plaintiff argues in his Opposition that "he was timely retaliated against by Defendants Couch, Walker and an unknown mailroom staff member for filing a complaint against the mailroom where he was deprived the right to sign an inmate trust account withdrawal form." (*See* Opp'n at 21.)  In response, Defendants argue that Plaintiff must demonstrate that "Couch and Walker knew of the previously filed grievances" and there is no evidence in the record to demonstrate this knowledge.  (*See* Mot. at 36.)  The Court agrees that Plaintiff identifies to no evidence in the record to support his claim that Defendants were aware that he was engaged in filing grievances against them.

It is Plaintiff who must show the causal connection between the adverse action and the protected conduct, *see Watison*, 668 F.3d at 1114, meaning Plaintiff must offer "either direct evidence of retaliatory motive" or circumstantial evidence of Defendants' purported retaliatory motive.  *See McCullum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (quoting *Allen v. Iranon*, 283 F.3d 1070, 1077 (9th Cir. 2002)).  In this matter, Plaintiff offers neither direct or circumstantial evidence of Defendants Bell, Couch, or Walker's alleged retaliatory motive.  Consequently, the Court **GRANT**S Defendants' Motion as to Plaintiff's retaliation claims.

## IV.   Fifth and Fourteenth Amendment Claims

In his First Amended Complaint, Plaintiff argues that Defendant Telles violated his "Fifth Amendment right to his property by denying him possession of an audio recording

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

that pertains to his criminal matter."[12]  (*See* FAC at 30.)  The Supreme Court, however, has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  Consequently, where the state provides a meaningful post-deprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause.  The California Legislature has provided a remedy for tort claims against public officials pursuant to California Government Code §§ 900 *et seq.*  An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes.  *See Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

Here, because California provides a post-deprivation remedy for such losses, Plaintiff may not bring a due process claim under the Fourteenth Amendment for the alleged deprivation of his personal property.  *See Barnett v. Centoni*, 31 F.3d 813, 816–17 (9th Cir. 1994).  Accordingly, the Court **GRANTS** Defendants' Motion as to Plaintiff's Fifth and Fourteenth Amendment Due Process claims.

## V.    Fourteenth Amendment Equal Protection Claim

On August 8, 2016, Plaintiff claims he received a letter from his attorney indicating that CEN Litigation Coordinator Telles had informed him that Plaintiff was not permitted to possess the audio recordings that his attorney had obtained.  (*See* FAC at 29.)  Plaintiff argues that this violated his right to equal protection under the law because other inmates were permitted to possess audio recordings in their cells.  (*See id.*)

---

[12] "The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States." *Castillo v. McFadden*, 370 F.3d 882, 889 n.5 (9th Cir. 2004).  Here, because Plaintiff is not challenging the actions of the federal government, the Fifth Amendment does not apply and the Court will construe Plaintiff's claim as one under the Fourteenth Amendment.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir. 2001).

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Vacco v. Quill*, 521 U.S. 793, 799, (1997) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)); *Fraley v. Bureau of Prisons*, 1 F.3d 924, 926 (9th Cir. 1993) (per curiam). To establish an equal protection violation, a plaintiff must demonstrate "that the [challenged action], either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group." *See McLean v. Crabtree*, 173 F.3d 1176, 1185 (9th Cir. 1999). "Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the two groups is justified." *Id*. (citation and quotations omitted). If the aggrieved party is a member of a protected or suspect class, or otherwise suffers the unequal burdening of a fundamental right, the court applies strict scrutiny. *See City of Cleburne*, 473 U.S. at 439–40. On the other hand, "[g]overnment actions that do not . . . involve suspect classifications will be upheld if [they] are rationally related to a legitimate state interest." *See Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1208 (9th Cir. 2005). "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003) (emphasis in original) (quoting *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994)).

Here, there is no evidence in the record that Plaintiff is a member of a "protected class" and, consequently, the Court looks to whether there is a rational basis for the claims made by Plaintiff. In his First Amended Complaint, Plaintiff introduces an exhibit that he claims shows the CDCR "made arrangements" for another inmate to "have access to his audio recordings." (*See* FAC at 29–30.) Defendant Telles, however, attests that, in 2016, Plaintiff's counsel asked her whether she would "take possession of audio recordings related to Plaintiff's underlying conviction and play them for Plaintiff." (*See* ECF No. 167-6 ("Telles Decl.") ¶ 2.) Telles informed him that was not appropriate and, when his counsel

asked whether Plaintiff "would be permitted to possess the audio recordings," she informed him that pursuant to CEN policy, "inmates were not permitted to possess CDs unless they were factory sealed." (*See id.*)  This policy "pertaining to possession of digital evidence related to criminal matters" was changed in 2019.  (*See id.*)

Plaintiff may establish an equal protection claim only if he introduces facts sufficient plausibly to show that Defendants intentionally treated similarly situated inmates differently without a rational basis for doing so.  *See Engquist v. Ore. Dep't of Agriculture*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1972); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  To demonstrate an equal protection claim under this "class of one" theory, however, Plaintiff must allege facts plausibly showing that: (1) he is a member of an identifiable class, (2) he was intentionally treated differently from others similarly situated, and (3) there is no rational basis for the difference in treatment.  *See Nurre v. Whitehead*, 580 F.3d 1087, 1098 (9th Cir. 2009) (citing *Village of Willowbrook*, 528 U.S. at 564).

Defendants argue that there is no evidence in the record to show that Plaintiff was treated differently from any other inmate because "Madden and Telles were following the policy in place, knew Plaintiff's attorney had the audio recordings, and provided him with alternatives for playing the audio recordings for Plaintiff." (*See* Mot. at 28–29.)  Plaintiff attempts to raise a disputed fact to show that he was "intentionally treated" differently from other inmates in his situation by pointing to a purported settlement agreement between a different inmate and the CDCR, in which the CDCR allegedly agreed to the following language: "If in the future the Plaintiff receives audio recordings related to his criminal case, those recordings will be held with his legal property in Receiving and Release." (*See* FAC at 184–87.)  This settlement agreement, however, is neither dated nor signed.  (*See id.*)  Consequently, it has no evidentiary value to dispute Defendants' testimony that they applied a policy to Plaintiff that they applied to every other inmate at that time.

/ / /

16-CV-3079 TWR (RBM)

1    Plaintiff also submits a declaration from Lynn Milner, who declares that, on July 10,

2   2017, he spoke with Law Librarian Eanes, who told him that if he "had materials on a CD

3   from the court or district attorney he would retrieve a computer, bring it to the Law Library

4   and allow [him] to listen to and/or view [his] materials." (*See* Opp'n at 359.)  Plaintiff,

5   however, fails to show how Inmate Milner is "similarly situated" to him.  In fact, unlike

6   Plaintiff, inmate Milner was not represented by counsel.  Further, as discussed above,

7   Plaintiff admitted in a separate civil action that his counsel had sent a private investigator

8   to CEN, who had played the audiotapes for Plaintiff.  In any event, the fact that a different

9   CDCR employee may have applied a policy differently to a different inmate a year later

10   than the CDCR employees who interacted with Plaintiff does not demonstrate that there

11   was any discriminatory intent behind the decisions implemented by Defendants Madden

12   or Telles.  Plaintiff must overcome Defendants' showing that there is no evidence in the

13   record that the Defendants *in this action* treated him differently from other inmates at CEN.

14    Because Plaintiff has failed to do so, the Court **GRANTS** Defendants' Motion as to

15   Plaintiff's Fourteenth Amendment equal protection claim.[13]

16   **VI.   Sixth Amendment Right-to-Counsel Claim**

17    Finally, in his First Amended Complaint, Plaintiff argues that Defendants violated

18   his Sixth Amendment rights when they purportedly opened his legal mail to the California

19   Innocence Project, Los Angeles County District Attorney Jackie Lacey, and mail from the

20   San Diego Superior Court. (*See* FAC at 21.)  As already set forth above, however, the only

21   mail that could potentially be considered "legal mail" is the mail to and from attorneys with

22   the California Innocence Project.

23

24   ───────────────────

25   [13] Defendants also move for summary judgment as to Plaintiff's claims arising from possession of the

26   audio tapes on the ground that they are entitled to qualified immunity. (*See* Mot. at 29–30.)  Because the

     Court has found that Defendants are entitled to summary judgment as to these claims, it need not reach

27   any issues regarding qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no

     constitutional right would have been violated were the allegations established, there is no necessity for

28   further inquiries concerning qualified immunity.").

26

Inmates do have Sixth Amendment rights with respect to attorney-client correspondence marked as legal mail. *See Wolff v. McDonnell*, 418 U.S. 539, 576–77 (1974); *Mangiaracina v. Penzone*, 849 F.3d 1191, 1196 (9th Cir. 2017) (finding that the "practice of opening legal mail in the prisoner's presence is specifically designed to protect" the "Sixth Amendment right to confer privately with counsel"). Defendants argue, however, that the mail purportedly opened outside of Plaintiff's presence was not from his legal counsel. Instead, they argue that Plaintiff was represented by Attorneys Brisnow, Campbell, and Hunter at the time he claims his legal mail was opened from the California Innocence Project and, consequently, there was no impact on his ability to "confer privately with counsel." *See Mangiaracina*, 849 F.3d at 1196. Indeed, Plaintiff admitted in his deposition that he had continuous legal representation between 2016 and 2019, (*see* ECF No. 167-5 at 4–158 ("Defs.' Ex. 1") at 32), and that his attorneys were Brisnow, Campbell, and Hunter. (*See id.*) Plaintiff also conceded that he was not represented by the California Innocence Project at the time he claims his legal mail was opened outside of his presence. (*See id.* at 80.)

Because Plaintiff offers no admissible evidence to dispute Defendants' showing that they did not impede Plaintiff's Sixth Amendment rights to confer with his counsel with regard to the alleged opening of his mail from the California Innocence Project, the Court **GRANTS** Defendants' Motion as to Plaintiff's Sixth Amendment claims.

## CONCLUSION

For the reasons set forth above, the Court **DIRECTS** the Clerk of Court to terminated Defendants Swain, Brown, John and Jane Does, and Rohrer from the Court's Docket and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No. 167). Specifically, the Court **DENIES** Defendants' Motion as to Plaintiff's First Amendment claims based on the opening of his legal mail outside his

/ / /

/ / /

/ / /

presence but **GRANTS** Defendants' Motion as to all remaining claims in Plaintiff's First Amended Complaint.

**IT IS SO ORDERED.**

Dated:  February 8, 2022

_____

Honorable Todd W. Robinson

United States District Court

16-CV-3079 TWR (RBM)